In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-1423

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALFRED LOCK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-CR-128—**Rudolph T. Randa**, *Chief Judge.*

ARGUED SEPTEMBER 15, 2006—DECIDED OCTOBER 20, 2006

Before FLAUM, *Chief Judge*, and KANNE and SYKES, *Circuit Judges.*

FLAUM, *Chief Judge.* In October 2005, defendant-appellant Alfred Lock pled guilty to one count of conspiracy to distribute crack cocaine. In January 2006, the district court sentenced Lock to 84 months' imprisonment, based, in part, on an eight point criminal history score. The district court assigned two criminal history points because of Lock's two Milwaukee Municipal Court convictions for "Loitering-Illegal Drug Activity." Lock appeals the inclusion of those convictions in his criminal history score. For reasons set forth in this opinion, we vacate the district court's decision to include Lock's Loitering-Illegal Drug Activity convictions

in his criminal history calculation and remand the case for re-sentencing.

## I. BACKGROUND

In October 2005, Alfred Lock pled guilty to conspiring to distribute crack cocaine. Between the time Lock entered a guilty plea and his sentencing hearing, the probation office created a pre-sentencing report ("PSR") that outlined Lock's criminal history. The district court adopted the PSR and, based on the report's recommendations, sentenced Lock to 84 months in prison. The PSR adopted by the court calculated Lock's criminal history at level IV, based upon eight criminal history points.[1] Included in that calculation were two Milwaukee Municipal Court convictions for "Loitering-Illegal Drug Activity," which accounted for two of the eight points. Lock had been sentenced to fines of $500 and $640 for those municipal convictions.

Milwaukee's municipal code contains several different classes of loitering. *See, e.g.*, MILWAUKEE, WIS., CODE § 106-23 (2006) (Loitering of Minors); § 106-31 (Loitering or Prowling); § 106-35 (Loitering-Soliciting Prostitutes); and § 106-35.6 (Loitering-Illegal Drug Activity). The code section under which Lock was convicted states:

> [a]ny person who loiters or drives in any public place in a manner and under circumstances manifesting the

---

[1] Although Lock's calculated offense level was 27, with a criminal history category of IV, the sentencing judge adjusted the offense level down two levels based on the defendant's extraordinary physical impairment, i.e., paraplegia. With an adjusted offense level of 25, the guidelines advised a sentence in the range of 84 to 105 months. Had the court not counted the "Loitering-Illegal Drug Activity" convictions, Lock's criminal history category would have been III and the advisory guidelines range would have been 70 to 87 months.

> purpose of inducing, enticing, soliciting or procuring another to engage in illegal drug activity shall forfeit not less than $500 nor more than $5,000 or upon default of payment be imprisoned for not more than 90 days.

*Id.* In order to guide law enforcement, the ordinance highlights various circumstances that a police officer may consider to determine whether an individual intends to engage in illegal drug activity. Those circumstances include frequenting "a known area of illegal drug activity;"[2] beckoning to stop or engaging in conversation "known drug sellers or purchasers;"[3] stopping a motor vehicle and selling/purchasing or attempting to sell/purchase illegal drugs; transferring small objects or packages for currency in a furtive fashion; and fleeing upon the appearance of a police officer.[4] § 106-35.6(2). The ordinance cautions that "[n]o arrest may be made for a violation . . . unless the arresting officer first affords the person an opportunity to explain the person's presence and conduct, unless flight . . . or other circumstances make it impracticable to afford such an opportunity." *Id.* Moreover, "no one shall be convicted of

---

[2] A "known area of illegal drug activity" is defined as "a public place where, within 3 years previous to the date of arrest . . . within the collective knowledge of the police department, a person has been arrested for a violation which led to a conviction in any . . . court of an offense involving illegal drug activity." § 106-35.6 (1)(b). Although this language is quite broad, there is no reason to consider the validity of the underlying ordinance at this time.

[3] A known drug seller or purchaser is essentially any person who has been convicted of any drug offense within the past three years. *See* § 106-35.6 (1)(c).

[4] The facts underlying Lock's municipal conviction are unknown. Lock recalls only that he was standing around with some people when he was ticketed. The record contains neither corroboration nor contradiction of this recollection.

violating this section if it appears at trial that the explanation given was true and disclosed a lawful purpose." *Id.* The Loitering-Illegal Drug Activity ordinance does not specifically define "loitering," but presumably the term is used consistently throughout Milwaukee's various loitering ordinances.

After the probation office filed a PSR that included the two Loitering-Illegal Drug Activity convictions in its criminal history calculation, Lock filed a written objection. He argued that the lack of specifics and documentation regarding the convictions warranted their exclusion from his criminal history calculation. Because the municipal convictions dated back to 1995, the city had destroyed the records associated with them pursuant to municipal policy. When prompted by the district court to elaborate on his objection, Lock noted that the United States Sentencing Guidelines specifically exclude convictions for loitering and prior similar offenses. U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(c)(2) (2004) (hereinafter "U.S.S.G.").

The Sentencing Guidelines provide that sentences for misdemeanor and petty offenses are generally included in a defendant's criminal history calculation. U.S.S.G. § 4A1.2(c). Despite the general tendency towards inclusion, however, the guidelines list a group of offenses that should never be counted in a criminal history calculation:

> Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are *never* counted:
>
> Hitchhiking
>
> Juvenile status offenses and truancy
>
> *Loitering*
>
> Minor traffic infractions (<u>e.g.</u>, speeding)
>
> Public intoxication
>
> Vagrancy.

U.S.S.G. § 4A1.2(c)(2) (emphasis added). The Guidelines mandate that loitering convictions should never be counted as a part of a defendant's criminal history score. Nonetheless, the district court opted to include Lock's Loitering-Illegal Drug Activity convictions in his criminal history score, reasoning that the illegal drug activity element of the offenses distinguished them from ordinary loitering offenses.

## II. Discussion

### A. Standard of Review

This Court reviews a district court's interpretation and application of the Sentencing Guidelines de novo. *See United States v. Ellis*, 440 F.3d 434, 436 (7th Cir. 2006). Despite an initial dispute regarding the applicable standard of review, the parties have since agreed that the district court's application of the Guidelines in this case should be reviewed de novo.[5] At the time of sentencing, the district court recognized that this case presented a close question of statutory construction, and that this Court may wish to address it.[6] We do so now, reviewing the district court's

---

[5] At first, the parties disputed whether Lock preserved his claim that U.S.S.G. § 4A1.2(c)(2) prohibits the inclusion of Loitering-Illegal Drug Activity convictions in a defendant's criminal history score. Although Lock did not cite that particular section of the Sentencing Guidelines in his written objections, he orally raised the claim before the sentencing court, so it was not forfeited. *See, e.g.*, *United States v. Ortiz*, 431 F.3d 1035, 1038 (7th Cir. 2005) (recognizing that the Seventh Circuit construes waiver principles liberally in favor of the defendant). At argument, the government conceded that Lock had not forfeited his claim.

[6] The district court remarked:

(continued...)

application of the guidelines de novo.

## B. Inclusion of "Loitering-Illegal Drug Activity" Conviction in Criminal History Score

Although the issue of how and whether to count "loitering plus" offenses in a defendant's criminal history score has arisen with some frequency in the Eastern District of Wisconsin, it is an issue of first impression in this Court. We therefore consider the plain language of the guidelines, the terms of the ordinance, the available case law, and the purpose of anti-loitering ordinances in order to determine whether Lock's convictions were properly included in his criminal history.

The Supreme Court has instructed that in "cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (citations and quotations omitted). Absent a clearly expressed legislative intent to the contrary, the plain language should be conclusive. *Id.* In this case, the fact that the Milwaukee ordinance violation is primarily deemed "loitering" carries great weight. After all, in

---

[6] (...continued)

> I think the ready response to [the argument that the convictions should be excluded], and the one that the Court would accept at this point, although it's—could be a subject of Seventh Circuit consideration, is that when I read (1) of that section which deals with including ordinances that are also criminal offenses under State law, it could be argued in turn that loitering with drug related activity is something that would fall under a similar State law offense.

Transcript of Sentencing Hearing at 10-11, *United States v. Lock*, (No. 05-CR-128) (E.D. Wis. 2005).

calculating a defendant's criminal history score, the Sentencing Guidelines exclude certain offenses "by whatever name they are known." U.S.S.G. § 4A1.2(c)(2). Loitering by any other name is still loitering, but the relevant inquiry is whether Loitering-Illegal Drug Activity constitutes a different and therefore distinct offense.

Black's Law Dictionary defines loitering as remaining "in a certain place . . . for no apparent reason." BLACK'S LAW DICTIONARY 953 (7th ed. 1999). On the other hand, the Model Penal Code's definition refers to behavior that is "not usual for law abiding individuals." MODEL PENAL CODE § 250.6 (2001). While the first definition of loitering denotes a lack of purpose, characterizing the activity as at least neutral if not entirely innocent, the second definition suggests that loiterers may harbor illicit motives. The first definition therefore supports the government's argument that the illegal drug activity component of Lock's conviction differentiates it from loitering as traditionally conceived. On the other hand, the Model Penal Code's definition, by recognizing that loitering includes suspicious activity and possibly criminal intent, supports Lock's claim that Loitering-Illegal Drug Activity is the same as or similar to "simple loitering." Given these competing definitions, and absent any definition in the Guidelines, the plain language does not conclusively resolve whether loitering as used in U.S.S.G. § 4A1.2(c)(2) encompasses Lock's municipal convictions.

Because the plain language of the Guidelines does not indicate whether "loitering-plus" offenses are different in kind from "simple loitering," this Court must independently determine whether Loitering-Illegal Drug Activity is similar to the offense excluded by U.S.S.G. § 4A1.2(c)(2). We use a "common sense" approach in determining the similarity of offenses. *See United States v. Roy*, 126 F.3d 953, 954 (7th Cir. 1997) (holding that marijuana use is not similar to public intoxication under the Guidelines). Our multi-factor

approach takes into account all possible factors of similarity, including the punishment imposed, the perceived seriousness of the offense, the elements of the offense, the level of culpability, and the indication of recurring criminal conduct. *See United States v. Harris*, 325 F.3d 865, 872 (7th Cir. 2003). To inform its approach, this Court also considers the language of the Guidelines, and the purpose behind assessing a defendant's criminal history. *See Roy*, 126 F.3d at 954. The Guidelines factor a defendant's prior criminal history into his sentence in an effort to penalize recidivist behavior, protect the public, and generally deter individuals from criminal behavior. *See* 18 U.S.C. § 3553(a) (2003); *Roy*, 126 F.3d at 954. In order to ferret out those offenses that do not serve the goals of sentencing, the Guidelines do not count all misdemeanor sentences in calculating a defendant's criminal history. *Roy*, 126 F.3d at 954. In light of the aforementioned factors, common sense suggests that an offense primarily deemed "loitering" should be excluded under the Guidelines, but further inquiry is necessary to resolve any lingering doubts.

The illegal drug activity component of the Milwaukee ordinance raises some doubt as to whether the offense is of the non-serious variety Congress meant to exclude from criminal history calculations under the Sentencing Guidelines. The apparent theme of the offenses listed in U.S.S.G. § 4A1.2(c)(2) is that they are relatively minor infractions like speeding or hitchhiking. *Id.* The government argues that Loitering-Illegal Drug Activity is fundamentally more serious than and different in kind from garden-variety loitering. Given the relative seriousness of the Milwaukee ordinance violation, the government urges, the offense is countable under U.S.S.G. § 4A1.2(c) (1)(B), which permits the inclusion of municipal ordinance violations that are similar to the offense of conviction—in this case, conspiracy to distribute crack cocaine.

To bolster its argument, the government points to the fact that the fines for Loitering-Illegal Drug Activity are significantly higher than those for "Loitering or Prowling," suggesting that the former is a more serious offense. *See* MILWAUKEE, WIS., CODE § 106-31 (2006) (defining the offense as loitering or prowling "in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity"). However, the mere fact that the Milwaukee City Council found one suspected purpose of a loiterer more culpable than another does not make the offenses dissimilar as a matter of law, nor does it otherwise weigh against exclusion. After all, the fines for speeding may be worse than those for hitchhiking, but both offenses are excluded under the Guidelines. Moreover, it is the intent of Congress to which this Court must give effect, and the fines assessed by the city provide no evidence of congressional intent.

The government also highlights the behaviors outlined in the ordinance to help police determine whether a purpose to engage in illegal drug activity exists, arguing that these enumerated behaviors overlap "hardly at all with ordinary loitering." On the contrary, our own examination of the circumstances outlined in the ordinance reveals that the ordinance reaches many activities consistent with traditional notions of loitering. For example, one circumstance indicative of an illegal drug-related purpose is frequenting "a known area of illegal drug activity," defined as any public place where anyone has committed a drug offense in the last three years. § 106-35.6(1)(b). For many Milwaukee residents, standing on any neighborhood street corner—behavior indistinguishable from ordinary loitering—could amount to frequenting a known area of illegal drug activity. In addition, the ordinance considers engaging "known drug sellers or purchasers in conversation" indicative of an intent to engage in illegal drug activity.

§ 106-35.6(2). Because known drug sellers or purchasers include anyone who has been convicted of any drug offense in the last three years, *see* § 106-35.6(1)(c), merely standing around and talking to an ex-convict constitutes culpable behavior under the ordinance. Again, some Milwaukee residents may converse with ex-drug offenders in the course of an ordinary day. While some of the enumerated circumstances admittedly are less consistent with traditional notions of loitering, e.g., furtive transfers of small packages, we cannot conclude that the Milwaukee ordinance hardly overlaps with ordinary loitering as the government claims.

Since the language of the Milwaukee ordinance is not entirely consistent with traditional notions of loitering, we next turn to cases that have asked whether "loitering plus" offenses warrant exclusion under the Guidelines. Two circuits have considered this question. Both opinions are unpublished and they reach different conclusions. The Second Circuit, in *United States v. Paul*, 152 F.3d 921 (2d Cir. 1998), 1998 WL 398808, held that the district court erred by including two convictions for "Loitering in the First Degree"[7] in a defendant's criminal history score. The court recognized that "'Loitering' is specifically [excluded by] § 4A1.2(c)(2)." *Id.* at *1. Hence, the court reasoned, there was no need for analogy. *Id.* Further, the Second Circuit noted the absence of any "explanatory note to . . . the Sentencing Guidelines that indicates that certain types of loitering are not to be exempted from the Criminal History Category." *Id.* The court declined to venture beyond the plain language of the Guidelines. *See id.*

In contrast, the Third Circuit went beyond the plain language and conducted an analysis to determine whether

---

[7] The New York offense of Loitering in the First Degree includes loitering for the purpose of begging, gambling, soliciting sexual conduct, or various other illicit purposes. N.Y. PENAL L. § 240.35 (2003).

a "loitering plus" offense is similar to "simple loitering." *United States v. Harrity*, 64 Fed. App'x 335, 336 (3d Cir. 2003). Because the Guidelines offer no explanation of how to determine whether offenses are similar for purposes of inclusion, the court referred to its own case law on the matter. *Id.* at 337. The Third Circuit had previously held that offenses are similar if they contain the same elements. *Id.* After comparing the "loitering plus" offense at issue to traditional legal definitions of loitering, the court concluded that the relevant New Jersey offense differed "sharply from these definitions," because the state offense contained an additional element—the purpose of obtaining or distributing drugs. *Id.*

The Third Circuit's logic was later criticized in a ruling issued by the Eastern District of Wisconsin. *See United States v. Moore*, 288 F. Supp. 2d 955, 957 (E.D. Wis. 2003). In that case, the district court observed that the manner in which the Third Circuit framed the issue "led ineluctably to a conclusion that the offense should be counted." *Id.* In other words, any specification of a loiterer's purpose, under the Third Circuit's analysis, would constitute an additional element, and, as a result, the offense at issue would not be similar to "simple loitering." The district court went on to say that it was "both unnecessary and improper for the court to ask whether the offense in question was 'similar' to the listed offense" because the Sentencing Guidelines "plainly and unambiguously prohibit[ ] the counting of *all* loitering convictions—'by whatever name they are known.'" *Id.* (citing *Paul* with approval) (emphasis in original).

Nonetheless, the district court conducted a similarity analysis, using our "common sense" test and found that the Loitering-Illegal Drug Activity offense is not "categorically more serious" than "simple loitering." *Id.* at 959-60. The court then noted that the elements of simple loitering and the Wisconsin ordinance are identical, "save for the

defendant's motive or purpose to loiter," and held that the defendant's convictions for Loitering-Illegal Drug Activity should not be included in his criminal history. *Id.* at 960.

In short, no clear consensus has emerged regarding whether the "loitering-plus" offenses are the same as or similar to "simple loitering" for purposes of calculating a defendant's criminal history. Because the available case law does not resolve our inquiry, we consider the purpose served by anti-loitering laws. The Supreme Court discussed the utility of loitering statutes in *City of Chicago v. Morales*, 527 U.S. 41 (1999). In *Morales*, a plurality of the Court asserted the controversial proposition that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 53. Although the plurality criticized the Chicago anti-loitering law as "a criminal law [with] no *mens rea* requirement," *id.* at 55, it also recognized that a number of state courts have "upheld ordinances that criminalize loitering combined with some other overt act or evidence of criminal intent." *Id.* at 57-58. At the same time, the plurality noted, state courts were uniformly invalidating for vagueness "laws that do not join the term 'loitering' with a second specific element of the crime." *Id.* In other words, the plurality recognized that anti-loitering laws were not designed to target the merely idle while noting with approval the existence of "loitering plus" ordinances.

Justice Scalia, in dissent, lauded anti-loitering laws as crime prevention tools, observing that gangs attempting to establish their turf cease their "intimidating and unlawful behavior" when the police are in sight. *Id.* at 96. That is, anti-loitering laws permit police to disperse those suspected of illegal activities when police cannot catch them in the act. Justice Thomas added in a separate dissent that such laws have been used throughout history "to prevent crime by removing 'undesirable persons' from public before

they have the opportunity to engage in criminal activity." *Id.* at 102. Despite the discord among the justices as to whether the Constitution protects those who innocently loiter, all members of the Court seem to agree that anti-loitering laws are useful for targeting illicit activities. Given this rationale for enforcing anti-loitering ordinances, it would seem illogical to differentiate Milwaukee's ordinance simply because it specifies the illicit activity it seeks to prevent.

*Morales* required states and municipalities to re-examine their loitering ordinances for constitutional infirmities. In fact, Milwaukee city officials issued a statement that the Supreme Court ruling would not affect their laws because they are "very site-specific and activity-specific." *See* James H. Burnett III, *Ruling Unlikely to Affect Milwaukee Ordinances*, MILWAUKEE J. SENTINEL, Jun. 11, 1999, at A3. This statement demonstrates that Milwaukee's own officials recognized the potential shortcomings of simple loitering ordinances and that they had already attempted to cure any defects with their "loitering plus" variations. Furthermore, the local response underscores the fact that *Morales* put Congress on notice that loitering ordinances target criminal behavior—not just innocent standing around. Nonetheless, Congress declined to remove loitering from the list of offenses excluded by U.S.S.G. § 4A1.2(c)(2). It would be improper for us to do what Congress has declined to do through its power to legislate, i.e., count loitering offenses in a defendant's criminal history.

In sum, given the various indicia of similarity between the Milwaukee ordinance and the offense excluded by the Guidelines, as well as the purpose served by anti-loitering ordinances, the government's claim that Loitering-Illegal Drug Activity is not similar to—and is fundamentally more serious than—"simple loitering" must fail. First, logic tells us that similarly named offenses are in fact similar. An examination of the specific behaviors targeted

by the Milwaukee ordinance fails to refute that basic assumption. In addition, as *Morales* recognized, anti-loitering laws were fashioned to combat precisely the type of behaviors enumerated in the Milwaukee ordin-ance. Traditionally, these laws empowered the police to disperse groups gathering in high crime areas before they could engage in illegal drug activity or other illegal action. Finally, the specification of a loiterer's unlawful purpose in local ordinances can be characterized as a response to the type of vagueness concerns outlined in *Morales* rather than the creation of an entirely new offense. Creating different types of anti-loitering ordinances puts citizens on notice of the behavior police are targeting—whether it be drug dealing, solicitation of prostitutes, gang turf wars, or prowling; however, it does not change the fact that the ordinances primarily pro-hibit loitering. We therefore conclude that the district court erred in its application of the Sentencing Guidelines, and that Lock's convictions for Loitering-Illegal Drug Activity should be excluded from his criminal history score.

## III. CONCLUSION

For the foregoing reasons, we now VACATE the district court's decision to include Lock's Loitering-Illegal Drug Activity convictions in his criminal history calculation and REMAND the case for re-sentencing consistent with this opinion.

No. 06-1423                                        15

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*