In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 07-2080 & 07-2081

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRANCISCO CAZARES-OLIVAS and ISRAEL AGUILERA,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 06-CR-222-S—**John C. Shabaz**, *Judge.*

ARGUED JANUARY 10, 2008—DECIDED JANUARY 29, 2008

Before EASTERBROOK, *Chief Judge*, and RIPPLE and ROVNER, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* After they arrested Francisco Cazares-Olivas and Israel Aguilera for drug offenses, federal agents sought a warrant to search the house where, the agents believed, Cazares-Olivas and Aguilera kept their inventory. It was after 11 pm, and the agents feared that if they waited until morning someone else might beat them to the stash. One agent and an Assistant United States Attorney called a federal magistrate judge at 11:37 pm. During a recorded conversation the agent took an oath to tell the truth and laid out facts that, the

judge found, established probable cause for a search. The judge questioned the agent, obtained additional information, and eventually wrapped up the conversation this way: "the bottom line is you've got judicial authorization. It is so ordered. You can send your team in right now." The search, begun at 1:47 am and finished at 4:25 am, turned up more than 40 kilograms of cocaine. Cazares-Olivas and Aguilera pleaded guilty to possessing more than five kilograms of cocaine with intent to distribute; each was sentenced to 125 months' imprisonment. Conditional pleas reserved the right to contest the denial of the motion to suppress the evidence found during the search. See Fed. R. Crim. P. 11(a)(2).

Telephonic warrants are authorized by Fed. R. Crim. P. 41. An agent is supposed to fill out a form (called a "proposed duplicate original warrant") and must "read or otherwise transmit the contents of that document verbatim to the magistrate judge." Rule 41(e)(3)(A). The judge transcribes the information into the "original warrant," which he signs. The agents who proposed this search, however, must not have had a supply of blank warrants handy, and they (along with the Assistant United States Attorney and the magistrate judge) were unacquainted with the steps laid out in the rule. (At oral argument we were told that this was the only time within the last 15 years, if not longer, that a telephonic warrant had been requested in the Western District of Wisconsin.) The agents did not read a "proposed duplicate original warrant" to the judge, who in turn did not prepare an original warrant. He simply put the recording on file and went to bed. As he and the district judge later concluded, when addressing the motion to suppress, this means that no warrant ever issued authorizing the search. 2007 U.S. Dist. LEXIS 12823 (M.J. W.D. Wis. Feb. 22, 2007). The agents had judicial approval, based on probable cause, but they did not have a warrant.

The absence of a warrant is the beginning and ending of the defendants' argument that the evidence must be suppressed. Residential entries are presumptively unreasonable, and thus violate the fourth amendment, unless authorized by a warrant. E.g., *Payton v. New York*, 445 U.S. 573 (1980). There are exceptions—such as a resident's consent, or circumstances that justify action before a warrant can be obtained (e.g., ongoing or impending destruction of evidence)—none of which applies here. Only a need for haste is even in the picture, but the fact that the agents were able to invoke the Rule 41 procedure shows that they did not deem the situation pressing enough to dispense with a warrant. Defendants principally rely on *Groh v. Ramirez*, 540 U.S. 551 (2004), which held that absence from a warrant of the constitutionally particular description of "the place to be searched, and the persons or things to be seized" meant that there was no warrant as a functional matter. 540 U.S. at 559. If the omission of some language spoils a warrant, defendants inquire, what are we to make of the situation in which *nothing* has been written down?

What we make of it, like the magistrate judge and the district judge, is that this search occurred without a warrant. We assume (without deciding) that this omission made the search unreasonable and exposed the agents to a suit for damages. But it does not follow that the evidence is inadmissible. The exclusionary rule is used for only a subset of constitutional errors. For two prominent examples, consider *United States v. Leon*, 468 U.S. 897 (1984), which holds that evidence seized in good faith, in reliance on a warrant that turns out to be invalid, is admissible, and *Nix v. Williams*, 467 U.S. 431 (1984), which holds that evidence is admissible when it would have been discovered inevitably through lawful means. These decisions reflect the view that permitting people to get away with crime is too high a price to pay for errors

that either do not play any causal role in the seizure (the inevitable-discovery situation) or stem from negligence rather than disdain for constitutional requirements (the *Leon* situation). As the Court put it in *Nix*, "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, and not a *worse*, position than they would have been in had no police error or misconduct occurred." 467 U.S. at 443 (emphasis in original; footnote omitted).

The Court applied this principle in *Hudson v. Michigan*, 126 S. Ct. 2159 (2006), to hold that evidence seized during a search that was conducted unreasonably (because the officers failed to request admission and hold off a while before bursting in) is admissible in evidence nevertheless. The Court observed that the same evidence would have been seized had the officers waited patiently at the door: the officers' error affected the time but not the fact of the seizure. *Hudson* again stressed the high costs of the exclusionary rule and expressed a preference for using awards of damages to deter negligent errors in searches and seizures and compensate anyone injured by these errors. *Groh* was a suit for damages; we doubt that the Court would have invoked the exclusionary rule when a description of the things to be seized, though missing from the warrant, appeared in an affidavit that was filed with the court in support of the application and was respected when the search occurred. The inevitable-discovery doctrine, if nothing else, would have foreclosed use of the exclusionary rule in *Groh*.

What the Court said in *Hudson* and *Nix* is equally apt today. Had the magistrate judge written out and signed a warrant after hanging up the phone, everything would have proceeded exactly as it did. The agents would have conducted the same search and found the same evidence.

True, the agents would not have had a warrant (even an unsigned "proposed duplicate original warrant") with them, but appearing empty handed neither affected the search nor violated the Constitution. The fourth amendment reads in full: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." It does not require officers to carry warrants with them, and the Court stressed in *United States v. Grubbs*, 547 U.S. 90 (2006), that judges must not add to the Constitution's requirements.

A court of appeals had held that, in addition to "particularly describing the place to be searched, and the persons or things to be seized", a warrant must recite the "triggering condition" for a conditional search. The Justices thought the addition unsound and observed along the way that the fourth amendment does not require the officers to carry or display a paper warrant (547 U.S. at 98–99):

> "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches." *United States* v. *Stefonek*, 179 F.3d 1030, 1034 (CA7 1999) (citations omitted). The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the "deliberate, impartial judgment of a judicial officer . . . between the citizen and the police." *Wong Sun* v. *United States*, 371 U.S. 471, 481–482 (1963), and by providing, *ex*

*post*, a right to suppress evidence improperly obtained and a cause of action for damages.

Exactly so here. Cazares-Olivas and Aguilera received the benefit of a magistrate judge's impartial evaluation before the search occurred. The search was supported by probable cause—on a record fixed, and supported by an oath, in advance, to prevent hindsight from being invoked to justify the search. An agent particularly described the place to be searched and the things to be seized. The lack of a written document created a risk that agents would exceed their authority, but that is so whenever the warrant does not accompany the officers—and we know from *Grubbs* and earlier decisions such as *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir. 1987), that, whatever the most prudent course may be, the fourth amendment does not require officers to have a warrant in hand when searching. See also *United States v. Shorter*, 600 F.2d 585, 587 (6th Cir. 1979) (an agent's failure to prepare a "proposed duplicate original warrant" until after the search had been conducted does not require suppression of the evidence).

What remains is the violation of Rule 41. The agents did not prepare and read to the judge a "proposed duplicate original warrant". The judge did not prepare and sign an original warrant. But violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause, and with advance judicial approval. So we held for Rule 41 in particular in *United States v. Trost*, 152 F.3d 715, 722 (7th Cir. 1998). Accord, *United States v. Rome*, 809 F.2d 665 (10th Cir. 1987). See also, e.g., *United States v. Caceres*, 440 U.S. 741 (1979) (violation of statutory requirements that go beyond the Constitution's demands does not justify the suppression of evidence unless the statute itself specifies this remedy). The violation of Rule 41 is regrettable but unlikely to

recur. Allowing these defendants to go free would be a remedy wildly out of proportion to the wrong, which caused them no injury.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*