# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-2294

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL J. BERKOS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 148—**Wayne R. Andersen**, *Judge.*

_____

ARGUED FEBRUARY 22, 2008—DECIDED SEPTEMBER 9, 2008

_____

Before EASTERBROOK, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

BAUER, *Circuit Judge*. Defendant-Appellant Daniel J. Berkos was charged with, and entered a conditional guilty plea to, willfully failing to pay more than $145,000.00 in child support for the support of his only son, Stuart

Berkos ("Stuart"), in violation of 18 U.S.C. § 228(a)(3).[1] Berkos reserved his right to appeal the district court's rulings on two motions to suppress evidence obtained from two searches: one on an internet service provider in Texas, and the second on Berkos's Arizona residence.

## I. BACKGROUND

Debra Berkos ("Debra") and Berkos were married on Valentine's Day of 1987 in Illinois. Debra gave birth to their son, Stuart, the next year. The wedded bliss ended shortly thereafter and the couple divorced in 1994. Debra was awarded sole custody of Stuart pursuant to the Judgment For Dissolution of Marriage, and Berkos was ordered to pay $1,019.31 per month in child support. Berkos consistently failed to make child support payments in accordance with the 1994 court order. In fact, Berkos made only one voluntary payment of $1,780.48 in 1996. The only other payments made toward Berkos's support obligation were involuntary Federal Tax intercepts, totaling $7,924.94; as of October 31, 2006, Berkos was $149,012.56 in arrears.

Sometime in 1996, Berkos moved from Illinois to California with his girlfriend, Darlene Pepevnik. Debra and

---

[1] Berkos was also charged with conspiracy to avoid support, in violation of 18 U.S.C. § 371 (Count Two), and making a false statement to a federal agent, in violation of 18 U.S.C. § 1001 (Count Three). Both counts were dismissed after Berkos entered his conditional guilty plea to Count One.

Stuart remained in Illinois. While residing in California, Berkos lived with Pepevnik and worked for various companies, earning more than enough to satisfy his child support obligations, but he continued to avoid making payments.[2] Between December of 1996 and December of 1998, Berkos worked for Universal Scheduling Company. Berkos routinely deposited his earnings into bank accounts exclusively in Pepevnik's name. Between September of 1999 and March of 2000, Berkos was employed by ESI International. At Berkos's direction, his ESI International paychecks were directly deposited into Pepevnik's bank accounts; he listed her as his wife. Between October of 2000 and May of 2001, Berkos was employed by Conjoin Inc., where his paychecks were again directly deposited into Pepevnik's accounts, and he again represented to Conjoin Inc. that Pepevnik was his wife. While working for another company, Strategic Management Group ("SMG"), in November of 2002, SMG was served with a demand for wage withholding from the State of Illinois for the past due child support obligation. SMG provided Berkos with a copy of the letter on Friday, November 15, 2002. On the following Monday, Berkos submitted a letter of resignation, providing no explanation for his sudden decision to quit.

In Summer of 2005, Berkos and Pepevnik moved to Arizona. Pepevnik told her co-workers in California that

---

[2] During their divorce proceedings, Berkos told Debra on numerous occasions that it would be his life's mission to "beat the system."

she was moving to Tucson with Berkos. In Tucson, Pepevnik got a job with Dillards Department Store. Dillards's employment records stated that Pepevnik's reported home address was 8903 N. Majestic Mountain Drive, in Tucson.

During the government's investigation of Berkos, agents learned that Berkos and Pepevnik operated two companies, C-Level Sales and Sinsinawa, both of which were linked to websites hosted by Reseller-Center.com, of Houston, Texas. Based on that information, on February 10, 2006, the investigating agents applied for and obtained a warrant from a district court judge in the Northern District of Illinois—where the investigation was being conducted—compelling Reseller-Center.com to disclose electronic communications records related to C-Level Sales and Sinsinawa. The information established that Berkos solely operated these companies and had received substantial income from them from 2004 to 2006. The agents also discovered that C-Level Sales began renting and receiving mail at a UPS Mailbox in Tucson in July of 2005, and that C-Level Sales was paying the rent for the residence located a 8903 N. Majestic Mountain Drive.

On March 1, 2006, a criminal complaint was issued against Berkos and Pepevnik for failure to support and conspiring to avoid support, in violation of 18 U.S.C. §§ 228(a)(3) and 371, respectively, and against Berkos for making a false statement to a federal agent, in violation of

18 U.S.C. § 1001.[3] A magistrate judge in Tucson, Arizona authorized a search warrant for the Majestic Mountain residence on that same day. On March 2, 2006, agents arrested both Berkos and Pepevnik at their Majestic Mountain residence and executed the search warrant, seizing various documents and items from the home.

## II.  DISCUSSION

Berkos makes two arguments on appeal: (1) that the district court erred in finding that evidence obtained by the search warrant for the electronic communications of Reseller-Center.com relating to C-Level Sales and Sinsinawa was admissible despite the jurisdictional limitations of Rule 41(b) of the Federal Rules of Criminal Procedure; and (2) that the district court erred in finding that probable cause supported the search warrant for the Majestic Mountain residence. We address each argument in turn.

### A.  Warrant Pursuant to 18 U.S.C. § 2703(a)

Berkos's first argument on appeal presents the question of whether a magistrate judge in the Northern District of Illinois may properly issue a search warrant ordering the search and production of electronic evidence pursuant to 18 U.S.C. § 2703(a), where the warrant is directed to an out-

---

[3] All charges against Pepevnik were dismissed on April 18, 2007.

of-district internet service provider located in the Southern District of Texas. Perhaps inadvertently, Berkos's argument presents the question of whether a violation of Federal Rule of Criminal Procedure 41(b), which discusses authority to issue search warrants, merits invoking the exclusionary rule. In Berkos's opinion, Rule 41(b)'s jurisdictional limitation—that a magistrate with authority *within* the district in which the warrant is to be executed—renders the warrant for Resellers-Center.com invalid. The district court rejected Berkos's argument, and found the warrant to be proper and the evidence obtained from Reseller-Center.com admissible.

This Court has held that "violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause and with advance judicial approval." *United States v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008); *United States v. Trost*, 152 F.3d 715, 722 (7th Cir. 1998). The remedy of allowing a defendant to go free based on a violation of Rule 41's requirements for obtaining a proper search warrant would be "wildly out of proportion to the wrong." *Cazares-Olivas*, 515 F.3d at 730. This alone merits affirming the district court's denial of Berkos's first motion to suppress. However, the government failed to argue this in its brief (or at oral argument, for that matter), and thus cannot avail itself of its benefit. Accordingly, we address the merits of Berkos's argument.

In reviewing a district court's decision to deny a motion to suppress evidence, we review its legal conclusions *de novo* and its factual findings for clear error. *United*

*States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008). Berkos's argument presents us with a legal question—an issue of statutory construction—and so we review the district court's decision *de novo. See United States v. Henderson*, 376 F.3d 730, 731-32 (7th Cir. 2006).

Statutory interpretation begins with the plain language of the statute. We "assume that the legislative purpose [of the statute] is expressed by the ordinary meaning of the words used." *United States v. Lock*, 466 F.3d 594, 598 (7th Cir. 2006) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)). Absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive. *Id*. The language and design of the statute as a whole may also provide guidance in determining the plain meaning of its provisions. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). We avoid interpreting a statute in a way that renders a word or phrase redundant or meaningless. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574-75 (1995); *Kungys v. United States*, 485 U.S. 759, 778 (1988).

The relevant statute, Title 18 U.S.C. § 2703(a) provides, in pertinent part, that:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under

investigation or equivalent State warrant.[4]

Section 2703(a), however, should not be viewed in isolation, since it provides that when "a court with jurisdiction over the offense" issues an out-of-district warrant for the seizure of electronic communications, it must do so "using the procedures described in the Federal Rules

---

[4] Shortly after September 11, 2001, § 2703(a) was amended by § 220 of the Uniting and Strengthening America by Providing Appropriate Tools to Intercept and Obstruct Terrorism Act of 2001, PL 107-56 (HR 3162) (the "USA Patriot Act"). Section 220 of the USA Patriot Act made two significant changes to § 2703(a), both broadening the government's ability to obtain warrants for electronic communications. First, search warrants could be issued "*using* the procedures described in the Federal Rules of Criminal Procedure," (emphasis added), rather than "under" those Rules, as was the case prior to § 220. Second, search warrants could be issued "by a court with jurisdiction over the offense under investigation," rather than exclusively by the court with geographical jurisdiction of the electronic property sought by the warrant. Berkos inappropriately relies on *United States v. Beaumont*, 972 F.2d 553 (5th Cir. 1992), for the assertion that Rule 41 only authorizes the district in which the property sought is located to issue a warrant, which was true in 1992, but is not true in light of § 220. We note that when Congress alters the words of a statute—as it did in this case—we presume that it intended to change the statute's meaning. *United States v. Wilson*, 503 U.S. 329, 336 (1992). However, we need not rely on the extensive legislative history of the 2001 amendment since, as discussed herein, we can rely on the plain language of the statute to reach our conclusion. *See Lock*, 466 F.3d at 598 (absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive).

of Criminal Procedure." Thus, we must consider the interplay between Federal Rule of Criminal Procedure 41, which discusses the issuance of search warrants, and § 2703(a). Rule 41(b), in pertinent part, reads:

> Authority to Issue a Warrant. At the request of a federal law enforcement officer or an attorney for the government:
>
> (1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district[.]

Berkos does not challenge that the Northern District of Illinois was the jurisdiction with authority over the offense under investigation, and rightfully so, since Berkos's obligation to pay child support was ordered by an Illinois court and the investigation of his failure to do so was conducted in Illinois. Berkos's disagreement with the district court's ruling lies in the § 2703(a) phrase "pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure." The problem with Berkos's argument—that allowing out-of-district warrants violates the procedures required by Rule 41(b)—is that Rule 41(b) is a substantive provision, not a procedural one.  Section 2703(a) refers only to the specific provisions of the Rules of Criminal Procedure, namely, Rule 41, that detail the *procedures* for obtaining and issuing warrants. The word "procedure" is defined as "a specific method or course of action," Black's Law Dictionary, 1241 (8th ed. 2004), or "a particular way of accom-

plishing something or acting." Merriam Webster's Collegiate Dictionary, 990 (11th ed. 2003). The common definition of "procedure" supports the conclusion that § 2703(a) incorporates only those provisions of Rule 41 that address the "specific method" or "particular way" to issue a warrant.[5] Moreover, Rule 41(b) is titled "Authority to Issue a Warrant" and discusses the circumstances as to when a court may issue a warrant, not the procedures to be used for issuing the warrant. In fact, the procedures for issuing a warrant are enumerated at Rule 41(e), which of course, would apply to § 2703(a). *See* Fed. R. Crim. P. 41(e). Finally, because § 2703(a) has its own jurisdictional provision authorizing district courts to issue warrants only where it has "jurisdiction over the offense," Rule 41 itself provides that the Rule may "not modify any statute regarding search or seizure, or the issuance and execu-

---

[5] Furthermore, we note that Congress amended the relevant language of § 2703(a), striking "under the Federal Rules of Criminal Procedure" everywhere it appeared and replacing that language with "using the procedures described in the Federal Rules of Criminal Procedure." *See* PL 107-56, § 220(a)(1). The word "procedures" was also modified by "described in," which further expressed Congress's intent that only the procedural aspects of Rule 41 apply to § 2703(a). *See id.* If all provisions of Rule 41 (or the Federal Rules of Criminal Procedure, for that matter) were strictly procedural, the phrase "described in" would be meaningless. *See Gustafson*, 513 U.S. at 574-75 (federal courts should avoid interpreting statutes in a way that renders words or phrases meaningless or redundant).

tion of a search warrant in special circumstances."[6] Fed. R. Crim. P. 41(a)(1). In sum, Rule 41(b) deals with substantive judicial authority—not procedure—and thus does not apply to § 2703(a).

### B. Warrant To Search Majestic Mountain Residence

Berkos also argues that the district court erred in failing to suppress evidence obtained from the search of the Majestic Mountain residence. Specifically, Berkos asserts that the affidavit in support of the search warrant application failed to establish probable cause that Berkos occupied the residence. The district court rejected this argument, finding that the affidavit adequately demonstrated the connection between the Majestic Mountain residence, Pepevnik, Berkos, and Berkos's companies.

When a search is authorized by a warrant, we give "great deference" to the issuing judge's conclusion that probable cause has been established. *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008) (quoting *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008)). So long as there is "substantial evidence in the record" to support the issuing judge's probable cause determination, we will

---

[6] We agree with the government that Congress provided such a "special circumstance" through § 2703(a) since warrants pursuant to § 2703(a) do not directly infringe upon the personal privacy of an individual, but instead compel a service provider to divulge records maintained by the provider for the subscriber.

defer to that decision. *United States v. Curry*, No. 07-2455, ___ F.3d ___, 2008 WL 3563636, at *8 (7th Cir. Aug. 15, 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002)). "[T]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (citation omitted).

We can dispose of Berkos's second argument with much less effort than the first. Berkos ignores the fact that there was significant evidence that Berkos's co-defendant, Pepevnik, resided at the Majestic Mountain home. The affidavit for the search warrant alleged that Pepevnik received mail there through the United States Postal Service, and that she maintained internet service in her name at that residence. Because Pepevnik was also initially charged in this case and because there was sub-stantial and undisputed evidence that she lived there, the warrant was supported by probable cause that evi-dence of the conspiracy to avoid support, such as bank records showing Berkos's funds being funneled into accounts in her name, would be found at the residence. Such evidence is properly admissible against Berkos since it is relevant to the existence of the conspiracy. *See* Fed. R. Evid. 402; *see also United States v. Price*, 418 F.3d 771, 779-80 (7th Cir. 2005).

Even if Pepevnik had not been a co-defendant, the affidavit was sufficient to allow a reasonable person to believe that there was a strong likelihood that evidence

of Berkos's criminal conduct would be found there. Berkos and Pepevnik lived together for several years before (according to Pepevnik's California co-workers) moving together to Tucson, Arizona. Pepevnik received mail at the residence, while Berkos had no known mailing address. Berkos's company, C-Level Sales, maintained a mailbox at a Tucson UPS Store at which both Berkos and Pepevnik received mail beginning around the same time as Pepevnik's move to Tucson, and C-Level Sales paid the rent for the Majestic Mountain residence. A reasonably prudent person would conclude that Pepevnik and Berkos maintained a personal relationship and that Berkos was likely residing with her at the residence paid for by his company. *See United States v. Lake*, 500 F.3d 629, 632 (7th Cir. 2007) (reiterating probable cause standard). Accordingly, there was substantial evidence in the record to support the issuing judge's probable cause determination, and therefore the district court properly determined that the evidence seized from the Majestic Mountain residence was admissible.

### III.  CONCLUSION

For the reasons set forth above, we AFFIRM the district court's denial of Berkos's motions to suppress evidence.