MANION, Circuit Judge,
dissenting.
The defendant Deanna L. Costello was convicted of “harboring” an illegal alien under 8 U.S.C. § 1324(a)(l)(A)(iii). Costello appealed, arguing that the facts were insufficient to support a conviction under the statute. In this appeal, the court rejects the ordinary definition of the term “harboring” and asserts that the facts cannot support Costello’s conviction even when considering a more exacting definition of “harboring”; thus, the court would reverse Costello’s conviction. I disagree, and conclude that the plain language of the *1051 statute and the stipulated facts support the conviction of harboring. Accordingly, I respectfully dissent.
It is important to recognize the facts of this particular case; we do not need to speculate with hypotheticals. Costello is a legal American resident. When her boyfriend first moved in with her in 2002, he was merely an alien who had entered the United States without being legally admitted. If he had been caught in his undocumented condition by the Department of Homeland Security, charging Costello with harboring, a felony, at that time arguably may have been an unjust application of the law. But that did not happen. Her boyfriend then committed drug crimes, was arrested and convicted of a federal felony, and imprisoned for several years. Following his imprisonment, he was formally deported from the United States, only to reenter the country shortly thereafter in violation of his status and order of deportation. He reunited with Costello when she picked him up at the bus station and then allowed him to live with her in her home for about seven months. His stay with Costello ended after he and his brother crashed when being chased by Drug Enforcement Administration (“DEA”) agents. During the chase he contacted Costello, but was taken into custody after the crash.
So Costello was not simply a person who was letting her boyfriend live with her. That may have been the case early in the relationship when all she knew was that he was “a Mexican whom she knew to be an illegal alien.” (Opinion, p. 1042.) But any naiveté (more likely deliberate ignorance) ceased when her boyfriend was arrested, convicted, imprisoned for a federal drug crime, and then deported. When Costello brought her boyfriend back to her home the second time, she was well aware that he was a convicted felon who had been deported after several years in federal prison, and who had further violated the law by reentering the United States without authorization in violation of his deportation proceedings.[1] What’s more, this is not a situation where Costello let her boyfriend stay at her place temporarily; instead, for approximately seven months, she provided him with a place to reside until another altercation with law enforcement ended with his arrest. This is not a case at the “outer margin.” (Opinion, p. 1048.)
The court appears to find Costello’s conviction unfair and worthy of reversal because there are so many potential “harboring” violations that presumably occur throughout the United States but are not prosecuted. But that is not a reason for us to invalidate a federal law that Congress expects the Department of Justice to enforce. Prosecution is not always necessary and proper. “If a person commits a relatively nominal act that is proscribed by § 1324(a)(l)(A)(iii), the executive branch has the discretion to forego prosecution.” United States v. Xiang Hui Ye, 588 F.3d 411, 416 (7th Cir.2009). When interpreting a statute, courts should not overlay the statute with a “veneer” that “appropriates that discretion and also invades the province of Congress.” Id. The court’s decision both invades congressional province and impermissibly questions the executive’s decision to prosecute.
Courts should interpret the statute according to its “plain language,” and “assume[ ] that the purpose of the statute is communicated by the ordinary meaning of the words Congress used.” Id. at 414-15 (quoting and citing United States v. Ber *1052 kos, 543 F.3d 392, 396 (7th Cir.2008)). In this case, the statute declares that any person who “conceals, harbors, or shields from detection” an illegal alien is criminally liable. 8 U.S.C. § 1324(a)(l)(A)(in). Contrary to the court’s assertion, the ordinary meaning of “harboring” certainly includes “providing shelter to.” This was a common understanding of the term when the term “harbor” was first added to the statute in 1917, and when the statute was amended and the term retained in 1952.[2] As we noted in Ye, “ ‘conceal,’ ‘harbor,’ and ‘shield from detection’ have independent meanings, and thus a conviction can result from committing (or attempting to commit) any one of the three acts.” Ye, 588 F.3d at 414. Perhaps if Costello had shooed her boyfriend out the back door when the police were approaching from the front, she could be accused of shielding. Or if she had hidden him in the basement under a pile of laundry when federal agents showed up with a search warrant, she could also be charged with concealing. But she neither shielded nor concealed; instead, she provided shelter to her boyfriend, and nothing more is required to charge her with harboring under the statute.
The court suggests a more exacting definition of “harboring” than “providing shelter to,” namely, “providing ... a known illegal alien a secure haven, a refuge, a place to stay in which the authorities are unlikely to be seeking him.” (Opinion, p. 1050.) Certainly Costello qualifies under this more narrow definition. Her home was a refuge and a safe haven because it was protected by the privacy the Fourth Amendment provides her — freedom from unreasonable searches. By allowing her boyfriend to stay with her, it made it much less likely for the authorities to discover that he had reentered the country.[3] Until his criminal conduct exposed him to the police, he lived in a haven secure from any governmental scrutiny. This refuge lasted for approximately seven months until the time her boyfriend was captured with drugs after running from his wrecked car following a high-speed chase.
Under the facts of this case, the charge and conviction for harboring was by no means an overreach. Costello acted not just with the knowledge that her boyfriend was a mere illegal alien, but also with the knowledge that he was a convicted felon who had been deported and had reentered the country in violation of his deportation order. And she did not give him just a short-term place to stay; instead, for seven months, she provided him with a safe place to live. What Costello did — providing her boyfriend with shelter and a safe place to stay — was exactly what Congress intended to prohibit under the statute.[4] I *1053 am in agreement with the district court’s conclusion. Costello was knowingly guilty of harboring under 8 U.S.C. § 1324(a)(1)(A)(iii), and she was properly charged and convicted. Therefore I respectfully dissent.

. The stipulation of facts does not indicate whether Costello knew her boyfriend’s reentry was a felony in violation of 8 U.S.C. § 1326(a).

. See Webster's New International Dictionary of the English Language 981 (1917) ("harbor” defined as "[t]o afford lodging to; to entertain as a guest; to shelter; to receive; to give refuge to”); Webster’s New Collegiate Dictionary 376 (John P. Bethel et ah, eds.1953) ("harbor” defined as "to entertain as a guest; to shelter; to give a refuge to”).

. The court asserts that because the government authorities knew that Costello’s boyfriend had previously lived at Costello’s house before his first arrest in July 2003, he was not "made safer” by living there on his return to the United States. But until Costello’s boyfriend connected with his brother in the drug trade and got caught by the DEA, the authorities apparently did not know that he had reentered the country; so they had no reason to suspect that he was staying at Costello’s house. Costello's home still provided him with a private safe harbor, free from public interference and out of the eyes of the authorities. Obviously the occasions when he stayed with his brother were by no means in a safer haven.

.It is important to note that Costello only received probation while her boyfriend got a stiff sentence for drug conspiracy and illegal *1053 reentry. It is likely that most of those potentially liable for harboring aliens with records similar to Costello's boyfriend are beneficiaries of or participate in a criminal enterprise — otherwise they don’t get caught — and so are charged and convicted of other, more serious offenses. Costello’s only offense was harboring an illegal alien who entered and remained in the United States in violation of law; but she knowingly committed that crime and it is not unfair that she receive the felony stain that comes with her conviction.