**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luther T. PENNINGTON and Senator Harding Colbert,
Defendants-Appellants.**

**Nos. 79-1991, 79-1992.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 16, 1980.

Decided Dec. 3, 1980.

James E. Edmondson, Asst. U. S. Atty., Muskogee, Okl., (Julian K. Fite, U. S. Atty., Muskogee, Okl., with him, on brief), for plaintiff–appellee.

Mac Oyler of Oyler, Smith & Bane, Oklahoma City, Okl., (Thomas S. Landrith, Ada, Okl., Co–counsel for appellant Pennington, Ada, Okl., with him, on brief), for defendants–appellants.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

Pennington and Colbert were convicted of conspiring to possess with an intent to distribute a controlled substance, marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to trial, defense counsel moved to suppress the use at trial of marijuana and other items, taken in a search of a quonset–hut owned by the defendants. After an evidentiary hearing, the motion to suppress was denied. On appeal, the only issue raised is the correctness of that ruling.

The warrant to search the quonset–hut was issued by a United States Magistrate sitting in McAlester, Oklahoma. The warrant issued on the basis of the affidavit of one Freddie Keith Means, an agent for the Oklahoma Bureau of Narcotics and Dangerous Drugs Control. Prior to the issuance of the warrant, Agent Means had been in

touch with an Assistant United States Attorney for the Eastern District of Oklahoma concerning his investigation. We infer that the Assistant United States Attorney encouraged State Agent Means to pursue the case. In any event, we know, from the record, that the Assistant United States Attorney telephonically contacted the United States Magistrate and personally arranged for a time when the Magistrate could conduct a hearing on the matter.

The only evidentiary matter before the Magistrate when he issued a warrant to search the quonset–hut owned by the defendants for marijuana was the affidavit of Agent Means. The warrant was directed to the "U. S. Marshal or any other authorized law enforcement officer." The warrant was executed by Agent Means, a fellow agent for the Oklahoma Bureau of Narcotics and Dangerous Drugs Control, two deputy sheriffs for Pontotoc County, Oklahoma, and a member of the Oklahoma State Highway Patrol. The search of the quonset–hut, which was being used as a greenhouse, disclosed a great number of growing marijuana plants, many of which were in the seedling stage.

The primary ground urged for reversal is that the execution of a federal search warrant by state officers does not comply with Fed.R.Crim.P. 41(c) and therefore voids the search and renders the items seized in the search inadmissible in a federal prosecution. Under the circumstances, we do not agree with this argument. In resolving this particular issue, we shall assume the initial applicability of Rule 41(c), though Government counsel makes some suggestion to the contrary.

■ There is no doubt that in the instant case we are concerned with a federal search, as opposed to a search that is purely state in character. The warrant was issued by a United States Magistrate in connection with an alleged violation of federal law. An Assistant United States Attorney had arranged for the state drug agent to go

before the Magistrate in an effort to secure a search warrant. The federal government had a "hand" in the matter, even though the affiant before the Magistrate was a state official, and therefore this was a federal search. *Lustig v. United States*, 338 U.S. 74, 78, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949) and *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir. 1979).

■ Being a search which is "federal in character," the legality of the search is conditioned on a finding that the warrant satisfies constitutional requirements and certain provisions of Fed.R.Crim.P. 41 "designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *United States v. Millar*, 543 F.2d 1280, 1284 (10th Cir. 1976) and *United States v. Sellers*, 483 F.2d 37, 43 (5th Cir. 1973), *cert. denied*, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).

■ As above indicated, the warrant here involved issued to the "U. S. Marshal or any other authorized law enforcement officer." Counsel points out that Fed.R. Crim.P. 41(c) provides only that the warrant "shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States." At the evidentiary hearing on the motion to suppress, Means conceded that he was neither "a civil officer of the United States" nor had he been "so authorized by the President of the United States," and that no federal agent or officer assisted in the execution of the warrant. Such deviation from 41(c), however, does not justify invoking the exclusionary rule.

A case quite similar to the instant one is *United States v. Burke*, 517 F.2d 377 (2nd Cir. 1975). The warrant in *Burke* was issued by a state judge, not a United States Magistrate, as in the instant case. However, in our view, that is not significant, since in *Burke*, as here, the search was federal in character. Being a federal search, the Second Circuit in *Burke* held that the search is governed by Rule 41.

In *Burke*, the warrant was issued to, and executed, by a state officer, and not a "civil officer of the United States . . . or a person so authorized by the President of the United States," as provided for by Rule 41(c). Notwithstanding this deviation from the rule, the Second Circuit declined to apply the exclusionary rule. That Court opined that courts should generally be "wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude." 517 F.2d at 386. More specifically, the Second Circuit commented as follows:

> . . . violations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule. Id. at 386–387.

Applying to the instant case the rationale of *Burke*, we conclude that the fact that the warrant was executed by a state officer, and not "a civil officer of the United States" or "a person so authorized by the President of the United States," as provided by Rule 41(c), does not require invoking the exclusionary rule. There is nothing to indicate that the search would not have occurred but for the violation of the rule, or would not have been "so abrasive" if the rule had been followed. In this latter regard, counsel suggests that the state officials, in collecting the evidence found in the quonset–hut greenhouse, inflicted some damage to the premises which would not have occurred had federal officials been involved. The assertion that federal officials would have been more neat and tidy in executing the search warrant is problematical. Any damage was incidental to the gathering of evidence, which, under the circumstances, was no small chore. The quonset–hut greenhouse was chock–full of growing marijuana plants, with stalks some 12 feet high. Photographs were taken which required some staging. Suffice it to say,

the defendants in the instant case did not show any real prejudice resulting from the fact that the warrant was executed by state officials, without federal help. See *United States v. Turner,* 558 F.2d 46, 52 (2nd Cir. 1977) and *United States v. Dudek,* 530 F.2d 684, 688 (6th Cir. 1976).

Applying the second prong of the *Burke* test, there is nothing in the record to indicate that the deviation from the literal requirements of Rule 41(c) was either intentional or deliberate, or that such in anywise undermined the integrity of the whole process. 517 F.2d at 387. In sum, the fact that the warrant was executed by a state officer, who was authorized under Oklahoma law to execute search warrants, and not by a federal official, is not, under the circumstances here disclosed, such a deviation from Rule 41(c) as would justify invoking the exclusionary rule.

■ The second ground urged for reversal concerns the sufficiency of the affidavit. Counsel contends that the affidavit does not measure up to the probable cause requirements of the Fourth Amendment. We disagree.

The warrant issued on the basis of Means' affidavit. In that affidavit Means stated that he had "met" a confidential and reliable informant who had advised him that he (the informant) had seen marijuana plants in a great number growing in the quonset–hut located on defendants' property. The informant indicated how he could tell that the plants he observed were in fact marijuana plants.

At the evidentiary hearing on the motion to suppress, it was brought out that Agent Means had "met" the informant in a telephone conversation and not in a face–to-–face situation. Whether this is an inaccuracy is debatable. One can "meet" another over the phone, as well as in person. In any event, it is not such as inaccuracy as would go to the integrity of the warrant. The important thing is the type of information relayed to the agent by the informant, and

not the means of transmission of such information. See *United States v. Turner*, 558 F.2d at 50.

In the affidavit, Agent Means characterized the informant as being reliable. Agent Means had actually never had any contact with the informant before their telephone conversation. However, Agent Means did check out the informant's name, in at least a limited sense, and found that he had no criminal record. Also, Agent Means inquired of a local sheriff who considered the informant to be reliable and truthful. It developed at the evidentiary hearing that the local sheriff actually didn't have a great deal of knowledge about the informant. Be that as it may, such discrepancies are only minor in nature, and under the circumstances do not affect the ultimate determination by the Magistrate that there was probable cause to search defendants' quonset–hut greenhouse. *United States v. Axselle*, 604 F.2d 1330, 1338 (10th Cir. 1979).

We emphasize the fact that the informant here involved was not a paid or professional informant, whose tips are sometimes open to suspicion. Rather, the informant was a private citizen who went onto the defendants' premises at their request to perform some excavating and leveling services, and while there observed the growing marijuana. As a public spirited citizen, he felt compelled, and commendably so, to report what he had seen to the proper officials. In *United States v. McCoy*, 478 F.2d 176, 179 (10th Cir. 1973), we noted that the fact that an affidavit sets forth information acquired from eyewitnesses to a crime, rather than from a professional informer, is of "considerable significance in connection with the magistrate's determination as to the reliability of the affiant's sources of information." In *McCoy*, we made reference to *United States v. Bell*, 457 F.2d 1231 (5th Cir. 1972), which held that though a supporting affidavit in an application for a search warrant must generally attest to the credibility of an informant and his information, such requirement did not extend to information acquired from an eyewitness to a crime.

Judgment affirmed.

McKAY, Circuit Judge, dissenting:

I agree with the majority's conclusion that the search and seizure at issue here is governed by the federal standards of the Fourth Amendment and Fed.R.Crim.P. 41, particularly the requirement of Rule 41(c)(1) that "[t]he warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States." The tenor of this rule makes clear that the officer to whom the warrant is directed must be the one who executes it.[1] The majority concedes that the quoted provision was violated in this case insofar as the warrant whose fruits formed the basis of defendants' convictions was not executed by a "civil officer of the United States" or by one authorized by the President to assist in enforcing federal law. Even so, the majority adopts the "harmless error" rule of *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975) and declines to suppress this tainted evidence.

*Burke*'s policy of being "wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude," 517 F.2d at 386, should be viewed with a degree of skepti-

---

1. It may be that federal warrants need not be directed to a *specific* person, *see United States v. Clancy*, 276 F.2d 617, 629 (7th Cir. 1960), *rev'd on other grounds,* 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); *but see United States v. Soriano*, 482 F.2d 469, 478 (5th Cir. 1973), and that non–federal officers can assist a federal officer in executing a federal warrant, *see United States v. Martin*, 600 F.2d 1175, 1181–82 (5th Cir. 1979), but no case has suggested that the one to whom a federal warrant is directed should not at least be present during its execution.

cism.[2] The Supreme Court "in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes, *or federal rules of procedure." United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966) (emphasis added). The dispositive question, then, is not whether the error before us is of constitutional magnitude but whether the relevant language of Rule 41(c)(1) expresses a concern important enough to warrant vindication by a rule that excludes evidence obtained in violation of that language.

The portion of Rule 41(c)(1) at issue here has been a subject of judicial concern primarily during the prohibition era. At that time, several "rum–runners" sought to challenge convictions that were based on evidence seized pursuant to warranted searches by federal prohibition agents. The issue in these cases was whether such agents were "civil officer[s] of the United States" as required by Rule 41's antecedent.[3] The courts found that federal prohibition agents were "civil officer[s] of the United States." *See Steele v. United States*, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761 (1925). At no time, however, did the courts assume that evidence seized by prohibition agents would be admissible if the agents had not been found to be "civil officers" within the meaning of the statute. On the contrary, several of the courts stressed the reasons for which only federal officers may execute federal search warrants:

Congress regarded it as essential that a search warrant should be directed only to an officer or class of officers authorized to enforce or assist in enforcing the laws of the United States, and should be executed only by the officer or class of officers to whom it was directed.

*Leonard v. United States*, 6 F.2d 353, 355 (1st Cir. 1925);

[U]nder the Espionage Act service of these drastic processes [*i.e.*, executing search warrants] was not committed to casual or even to regular agents or employees of a bureau; it was committed only to "civil officers" ... holder[s] of a public station, which embraces the idea of tenure, duration, emolument and duties, and is regarded as assuring a legal and proper exercise of power.

*Keehn v. United States*, 300 F. 493, 502–03 (1st Cir. 1924) (Anderson, J., dissenting).

[Search warrants] are necessary in the execution of government power, and the right to their use is fundamental and lawful; but the courts rarely exercise a more vitally important function than to preserve absolutely inviolate every constitutional and legislative safeguard against the abuse of such process.

.    .    .    .    .

The clearly stated limitation concerning the issuance of search warrants is that the commissioner "must issue a search warrant to a civil officer of the United States duly authorized to assist in enforcing any law thereof," and the inquiry

---

**2.** A recent amendment to Rule 41(c) states: "Absent a finding of bad faith, evidence obtained pursuant to a warrant issued under this paragraph is not subject to a motion to suppress on the ground that the circumstances were not such as to make it reasonable to dispense with a written affidavit." Rule 41(c)(2)(G). This provision implies that Congress intends that material violations of Rule 41 often must, upon proper motion, result in suppression of the evidence obtained pursuant to such a violation, and that any deviation from this general exclusionary rule should be based upon an express statutory exception such as Rule 41(c)(2)(G).

**3.** Rule 41's precursor was Section 6 of Title XI of the Espionage Act of June 15, 1917, ch. 30, 40 Stat. 217, 229, which also limited the execution of search warrants to "civil officer[s] of the United States." The legislative history on the part of the Espionage Act dealing with warrants is sparse: "This Title [Title XI] ... was based upon the New York law on this subject, and follows generally the policy of that law." H.R. Rep. No. 69, 65th Cong., 1st Sess. (1917), quoted in 55 Cong.Rec. 3307 (1917).

simply is whether the prohibition agent is "a civil officer of the United States . . . ."

*United States v. Musgrave,* 293 F. 203, 205 (D.Neb.1923);

There are (among others) four substantial guards against abuse of process provided [in Title XI of the Espionage Act of 1917, Rule 41's precursor]. . . . [T]he *fourth is* that the writ must be directed to those selected for their approved judgment and discretion, by whom alone the writ may be executed.

*United States v. Innelli,* 286 F. 731, 732 (E.D.Pa.1923).

The policy underlying the clear limitation of Rule 41(c)(1), which was so forcibly explicated by the courts charged with its original application, should apply with equal force today.[4] A federal warrant must be directed to and executed by federal officers.

If it is not, evidence seized on the basis of its authority should not be admitted into evidence to prove a violation of a federal statute. Because it is undisputed in this case that the warrant in question was not executed by a federal officer, I would remand this case to the district court for further consideration in light of the principles I have articulated in this opinion.

**4.** Whatever its applicability in other contexts, the "harmless error" rule relied upon by the majority should be rejected whenever, as here, Rule 41 promotes a significant articulable interest. The reasoning which requires that evidence seized without a warrant is to be suppressed even though a magistrate would have issued a warrant had it been applied for applies here:

A . . . rule "that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the [Fourth] Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." . . . Under such a rule "resort to [warrants] would ultimately be discouraged." *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964) (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) and *Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)).