**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

No. 14-3035

ZACHARY KRUEGER,

    Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:13-CR-10175-MLB-1)**
_____

Richard A. Friedman, U.S. Department of Justice, Washington, D.C. (Barry R. Grissom, United States Attorney, James A. Brown and Jason W. Hart, Assistant U.S. Attorneys, Topeka, Kansas; and David A. O'Neil, Acting Assistant Attorney General, and David M. Bitkower, Deputy Assistant Attorney General, Washington, D.C., with him on the briefs), for Plaintiff-Appellant.

Joel Mandelman, Office of the Federal Public Defender, Wichita, Kansas, for Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **GORSUCH**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

    This appeal arises from the district court's order granting Defendant-Appellee

Zachary Krueger's motion to suppress evidence seized in *Oklahoma* pursuant to a

warrant that was issued by a United States magistrate judge in *Kansas*. In granting Krueger's motion, the district court concluded that suppression was necessary because (1) the warrant violated Fed. R. Crim. P. 41, which generally limits a federal magistrate judge's warrant-issuing authority to the district where he or she sits, and (2) Krueger established that he was prejudiced by the Rule 41 violation. On appeal, Plaintiff-Appellant the United States ("Government") argues that reversal is necessary because the district court applied the wrong legal standard in determining that Krueger established prejudice. Exercising our jurisdiction under 18 U.S.C. § 3731, we AFFIRM the district court's order granting Krueger's motion to suppress.

## I. Facts

In June 2013, Homeland Security Investigations ("HSI") Agent Rick Moore learned that child pornography was being distributed over the internet from an IP address registered to Krueger, a Kansas resident. Agent Moore thereafter obtained a warrant from a United States magistrate judge in the District of Kansas ("Warrant 1") to search Krueger's Kansas residence for items such as computers and cell phones that may be used to depict child pornography visually. Upon executing Warrant 1 at 6:40 a.m. on June 13, however, Agent Moore discovered that Krueger was not home and that his computer and cell phone were not in the residence. Krueger's roommate, who was present when Agent Moore executed the warrant, indicated that Krueger was in Oklahoma City visiting a friend, Nate Benner, and that Krueger may have taken his computer and cell phone with him to Oklahoma.

2

Based on this information, Agent Moore asked Oklahoma-based HSI Agent Jeff Perkins to verify Krueger's whereabouts. That same day, June 13, Agent Perkins identified Krueger's automobile parked outside of Benner's Oklahoma residence. Agent Moore then sought and obtained a second warrant from a different United States magistrate judge in the District of Kansas ("Warrant 2"). This warrant—which was issued just hours after Agent Moore had executed Warrant 1—authorized law enforcement to search both Benner's Oklahoma residence and Krueger's automobile parked outside of Benner's residence for electronic devices belonging to Krueger or in his possession.

Agent Moore transmitted Warrant 2 to Agent Perkins in Oklahoma immediately after it was issued by the United States magistrate judge in Kansas. Upon receiving Warrant 2, Agent Perkins and a team of other agents went to Benner's Oklahoma residence. Krueger was present when the agents executed Warrant 2 at 12:30 p.m. on June 13, seizing (among other things) Krueger's computer and external hard drive.

Shortly after entering Benner's residence, however, one of the agents noticed that Warrant 2 had been issued by a federal magistrate judge in the District of Kansas—rather than a federal magistrate judge in the Western District of Oklahoma, the district within which Benner's residence is located—and asked Agent Perkins if that was acceptable. Agent Perkins promptly called Agent Moore in Kansas, who was then advised by the Assistant United States Attorney handling the case to refrain from searching the computer and hard drive until consent or an additional warrant

3

could be obtained.  Around the time that Agent Perkins was on the phone, an agent who was not aware of the potential defect in Warrant 2 was interviewing Krueger.  During this interview, Krueger waived his *Miranda* rights, admitted to viewing child pornography and trading it with others over the internet, and authorized HSI agents to assume his online presence with respect to his peer-to-peer networking account for investigative purposes.

Consistent with the Assistant United States Attorney's advice, the agents who seized Krueger's computer and hard drive in Oklahoma waited to search the devices until a Kansas Police Department officer visited Krueger's residence a few weeks later and obtained Krueger's written consent.  A subsequent search of Krueger's computer and hard drive revealed evidence that Krueger had downloaded and traded child pornography using his peer-to-peer networking account.  As a result, Krueger was charged with distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2).

## II. Procedure

Krueger thereafter filed a pretrial motion to suppress the evidence seized in Oklahoma as well as the statements he made to law enforcement.  See Fed. R. Crim. P. 12(b)(3), 41(h).  Most relevant on appeal, Krueger asserted that suppression was necessary because Warrant 2 violated Fed. R. Crim. P. 41, the general provision governing all searches and seizures that are "federal in character."  See United States v. Pennington, 635 F.2d 1387, 1389 (10th Cir. 1980).  Specifically, Krueger argued that Warrant 2—which was issued by a federal magistrate judge in the District of

4

*Kansas* for property already located in *Oklahoma*—violated Rule 41(b)(1), which provides that "a magistrate judge with authority in the district -- or if none is reasonably available, a judge of a state court of record in the district -- has authority to issue a warrant to search for and seize a person or property located *within the district*."[1] (Emphasis added.)

According to Krueger, this Rule 41 violation required suppression because Warrant 2, having been issued by a federal magistrate judge without authority to do so, was void from the outset, thereby rendering the Oklahoma search warrantless and unconstitutional.[2] Even if Warrant 2 was not void from the outset, Krueger argued that suppression was nonetheless necessary because he was prejudiced by the Rule 41 violation in the sense that he would not have cooperated with law enforcement had he known that Warrant 2 was issued by a federal magistrate judge who lacked warrant-issuing authority under the Rule.

After a suppression hearing, the district court granted Krueger's motion. In so doing, the district court concluded that Warrant 2 violated Rule 41(b)(1).[3] Although

---

[1] State court judges' authority under Rule 41(b)(1) turns on many factors that have no bearing on federal magistrate judges' authority under the Rule. Thus, although Rule 41(b)(1) addresses the warrant-issuing authority of both state court judges and federal magistrate judges, we expressly confine our analysis to federal magistrate judges' authority under the Rule.

[2] Krueger also argued in the district court that the search was unconstitutional for the independent reason that Warrant 2 lacked probable cause. The district court did not make a probable cause determination. Nor do we because we affirm the district court's suppression order based on Warrant 2's Rule 41 violation. See infra p. 14.

[3] The district court specifically rejected the Government's argument that Warrant 2 was valid in light of Rule 41(b)(2), which operates as an exception to Rule

5

the district court noted that not all Rule 41 violations require suppression, the court determined that suppression was necessary here because Krueger demonstrated prejudice in the sense that the Kansas magistrate judge would not have issued Warrant 2 had Rule 41 "been followed to the letter."  Applt. App. at 168 (Order Granting Mot. to Suppress at 7) (internal quotation marks omitted).

The district court thereafter set the matter for trial.  Shortly before trial commenced, the Government filed a timely notice of appeal.

### III. Analysis

On appeal, the Government concedes for the first time that Warrant 2 violated Rule 41(b)(1) because the United States magistrate judge in the District of Kansas did not have authority to issue a warrant for property already located in Oklahoma. Given the obviousness of this Rule 41 defect on the record before us, the Government's belated concession is a prudent one.[4]  See Government Br. at 21 n.4 (explaining that the district court found Warrant 2 "was so facially deficient that the good-faith exception should not apply" and expressly not appealing that ruling). Notwithstanding Warrant 2's Rule 41 defect, the Government urges us to reverse the

41(b)(1)'s within-district limitation by authorizing a federal magistrate judge to issue a warrant "for a person or property *outside the district* if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed."  (Emphasis added.)  The district court determined that Rule 41(b)(2) did not apply because both Krueger and the property at issue were already located in Oklahoma at the time Warrant 2 was issued. The Government does not contest that determination on appeal.

[4] We expressly do not address the propriety of suppression when, at the time of issuance, it is genuinely unclear whether the federal magistrate judge has authority to issue an outside-of-district warrant.

6

district court's order granting Krueger's motion to suppress, because, according to the Government, the district court applied the wrong legal standard in determining that Krueger demonstrated prejudice as a result of the Rule violation.[5] For the reasons outlined below, we disagree.

## A. Standard of review

A defendant who moves to suppress evidence obtained through a search with a warrant bears the initial burden of establishing that the search was illegal. See 3A Fed. Prac. & Proc. Crim. § 689 (4th ed.) (online database updated April 2015). We review a district court's legal rulings on such a motion de novo. United States v. McDowell, 713 F.3d 571, 574 (10th Cir. 2013).

## B. Rule 41 analytical framework

Where, as here, a district court determines that a Rule 41 violation justifies suppression, our review is guided by the analytical framework this Court adopted in United States v. Pennington, 635 F.2d 1387 (10th Cir. 1980). See United States v. Pulliam, 748 F.3d 967, 973–74 (10th Cir. 2014) (applying the Pennington framework

---

[5] The district court's prejudice determination is the *only* source of potential error that the Government identifies on appeal. We limit our review of the district court's order accordingly and therefore have no occasion to consider whether the district court correctly concluded that: (1) the good-faith exception to the warrant requirement was inapplicable given the obviousness of the Rule 41 defect; (2) Krueger's *Miranda* waiver and statements to HSI agents, acquired during the Oklahoma search, required suppression because they were fruits of the poisonous tree; and (3) Krueger's subsequent written consent to search his computer and hard drive, acquired a few weeks after the Government had already seized the devices, required suppression because Kruger's consent was involuntary. See Phillips v. Humble, 587 F.3d 1267, 1274 (10th Cir. 2009) (declining to reach an issue that was decided by the district court but not challenged on appeal).

to determine whether a purported Rule 41 violation justified suppression).  Under this framework, we begin by considering whether Rule 41 was in fact violated.  If so, we typically proceed by determining whether that specific Rule 41 violation rises to the level of a Fourth Amendment violation.  See Pennington, 635 F.2d at 1390; see generally David B. Levendusky, Annotation, Noncompliance with requirements of Rule 41 of Federal Rules of Criminal Procedure as ground for exclusion, in federal prosecution, of evidence procured under state search warrant, 25 A.L.R. Fed. 247 (2015) (explaining that Rule 41 is not coextensive with the Fourth Amendment because Rule 41 incorporates standards that are in some respects "more specific and more stringent").  If we determine that the Rule 41 violation is *not* of constitutional import, we then consider whether the defendant can establish that, as a result of the Rule violation, "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." Pennington, 635 F.2d at 1390.  Unless the defendant can establish prejudice or intentional disregard of the Rule, a non-constitutional violation of Rule 41 will not, by itself, justify suppression.  Id.

   1. *The Government concedes that Rule 41(b)(1) was violated*

   The first step in the Pennington framework is easily established because the Government concedes that Warrant 2 violated Rule 41(b)(1)'s within-district limitation on federal magistrate judges' warrant-issuing authority.

8

*2. We need not determine whether the Rule 41(b)(1) violation in this case rises to the level of a Fourth Amendment violation*

Because there is a clear Rule 41(b)(1) violation here, we would typically proceed through the Pennington framework by considering whether this specific Rule 41 violation rises to the level of a Fourth Amendment violation—i.e., we would consider whether an outside-of-district warrant issued by a federal magistrate judge who lacks authority to do so under Rule 41 violates the Fourth Amendment. The district court did not address this question, which would present an issue of first impression in this Circuit. The Government urges us to conclude that there was no constitutional violation in this case, arguing that any within-district limitation on federal magistrate judges' warrant-issuing authority is a feature of Rule 41 and the Federal Magistrates Act, 28 U.S.C. § 636(a)(1)—not a Fourth Amendment requirement. According to the Government, when it comes to who issues a warrant, all that the Fourth Amendment requires is a neutral and detached magistrate.

However, we need not decide the constitutionality of the Rule 41(b)(1) violation at issue here because doing so would not alter the outcome of this appeal. See United States v. Cusumano, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc) (declining to decide the constitutionality of the warrantless use of a thermal imager to scan the defendant's residence because the detective's affidavit was by itself sufficient to establish probable cause). On appeal, the Government abandoned all of the arguments it made against suppression below *except* its argument that Krueger failed to establish prejudice. See supra p. 7 n.5. Because the Government offers no

9

other basis for reversal,[6] and because (as explained in more detail below) we conclude that Krueger has established prejudice as a result of Warrant 2's Rule 41 defect, we affirm the district court's suppression order *regardless* of whether the Fourth Amendment contains a within-district limitation on magistrate judges' warrant-issuing authority. Thus, consistent with the fundamental rule of judicial restraint, we decline to reach a constitutional question that is not necessary to our resolution of this appeal. See Cusumano, 83 F.3d at 1250–51.

3. *Krueger established prejudice in the sense that the Oklahoma search might not have occurred had Rule 41(b)(1) been followed*

Accepting for purposes of our analysis the Government's contention that this Rule 41(b)(1) violation does not offend the Fourth Amendment, we next consider whether Krueger established that suppression was justified by showing either (1) prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) intentional disregard for a provision of the Rule. See Pennington, 635 F.2d at 1390. Because Krueger does not contest the district court's determination that neither the Kansas magistrate judge nor the HSI agents acted in bad faith, meaning that they did not intentionally disregard Rule 41, our analysis focuses on whether Krueger established prejudice.

---

[6] We do not consider the Government's argument—raised for the first time during oral argument—that, even if the Rule 41 violation here was of constitutional import, suppression was not necessary because it was reasonable for the HSI agents to seek a warrant in Kansas, the district with venue to prosecute the offense. See United States v. Abdenbi, 361 F.3d 1282, 1289 (10th Cir. 2004) ("The failure to raise an issue in an opening brief waives that issue.").

This Court has not yet had occasion to consider whether suppression is justified when a warrant is issued by a federal magistrate judge who clearly lacks authority to do so under Rule 41(b)(1).[7] The district court concluded that suppression was warranted because Krueger demonstrated prejudice in the sense that the federal magistrate judge in the District of Kansas would not have issued Warrant 2—meaning that the Oklahoma search might not have occurred—had Rule 41(b)(1)

---

[7] Over the years, we have addressed many other provisions of Rule 41, never concluding that the alleged Rule 41 violation(s) at issue justified suppression. See, e.g., Pulliam, 748 F.3d at 973–74 (concluding that alleged violation of Rule 41(f) for failing to provide defendant with a copy of the search warrant contemporaneous with the search did not justify suppression); United States v. Burgess, 576 F.3d 1078, 1097 (10th Cir. 2009) (concluding that violation of Rule 41(e) for failing to execute a warrant within ten days did not justify suppression); United States v. Hugoboom, 112 F.3d 1081, 1086-87 (10th Cir. 1997) (reciting the Pennington framework and concluding that failing to list on the anticipatory warrant an "on or before" date for execution of the warrant, an ostensible violation of former Rule 41(c), did not justify suppression); United States v. Mesa-Rincon, 911 F.2d 1433, 1436 (10th Cir. 1990) (concluding that former Rule 41(b) was not violated by a warrant permitting covert television surveillance, meaning suppression was not justified on this ground), holding modified on other grounds by United States v. Castillo-Garcia, 117 F.3d 1179 (10th Cir. 1997), overruled on another ground by United States v. Ramirez-Encarnacion, 291 F.3d 1219, 1222 n.1 (10th Cir. 2002); United States v. Rome, 809 F.2d 665, 669–70 (10th Cir. 1987) (concluding that violations of former Rule 41(c) for failing to comply with requirements for issuing a warrant pursuant to a phone affidavit did not justify suppression); United States v. Massey, 687 F.2d 1348, 1355–56 (10th Cir. 1982) (concluding that former Rule 41(a) was not violated because warrants, although based upon affidavit of state official, were requested by an Assistant United States Attorney and that violations of former Rule 41(c) for failing to designate a federal magistrate to whom the warrants will be returned and to comply with requirements for taking oral testimony to supplement affidavit did not justify suppression); Pennington, 635 F.2d at 1389–90 (concluding that violation of Rule 41(c) by virtue of warrant being executed by a state official, instead of a federal official, did not justify suppression).

Because none of these cases addressed Rule 41(b)(1), which is unique from other provisions of Rule 41 because it implicates "substantive judicial authority," United States v. Berkos, 543 F.3d 392, 397 (7th Cir. 2008), they offer limited guidance here.

"been followed to the letter." Order Granting Mot. to Suppress at 7 & n.3 (internal quotation marks omitted).[8]

On appeal, the Government argues that the district court applied the wrong prejudice standard in determining that the search might not have occurred. According to the Government, instead of asking whether the federal magistrate judge in the District of *Kansas* could have issued Warrant 2 in compliance with Rule 41, the district court should have asked whether any federal magistrate judge in the Western District of *Oklahoma*, the district within which Benner's residence is located, could have issued Warrant 2. We disagree.

Unlike the standard that the district court adopted—which would allow defendants to establish prejudice when the Government seeks and obtains a search warrant from a federal magistrate judge who lacks warrant issuing authority under Rule 41—the Government's proposed standard would preclude defendants from establishing prejudice in this context so long as the Government hypothetically could have obtained the warrant from a different federal magistrate judge with warrant-issuing authority under the Rule. When it comes to something as basic as who can issue a warrant, we simply cannot accept such a speculative approach. Thus, instead of focusing on what the Government *could have* done to comply with Rule 41(b)(1), we conclude that prejudice in this context should be anchored to the facts as they

---

[8] Although prejudice can be established by showing that, had Rule 41 been followed, the search *either* would not have been so abrasive *or* would not have occurred, we focus on the latter method of proving prejudice because that is the method upon which the district court relied.

12

actually occurred.[9] Cf. Coolidge v. New Hampshire, 403 U.S. 443, 450–51 (1971) (explaining that a search warrant issued by the state Attorney General was invalid even if a magistrate confronted with the same showing of probable cause would have issued the warrant and rejecting "the proposition that the existence of probable cause renders noncompliance with the warrant procedure an irrelevance"). Accordingly, we adopt the district court's standard for determining whether a defendant established prejudice as a result of a Rule 41(b)(1) violation and ask whether the issuing federal magistrate judge could have complied with the Rule.

Applying this standard, we conclude that Krueger established prejudice in the sense that the Oklahoma search might not have occurred because the Government would not have obtained Warrant 2 had Rule 41(b)(1) been followed. The Government sought and obtained Warrant 2 from a federal magistrate judge in the District of Kansas who clearly lacked Rule 41 authority to issue a warrant for property already located in Oklahoma. Had the magistrate judge recognized that clear and obvious fact, he surely would not have issued Warrant 2. And, had

---

[9] We find unpersuasive out-of-circuit cases that have engaged in this type of speculation when evaluating the impact of similar Rule 41(b)(1) violations. See, e.g., United States v. Cassidy, 532 F. Supp. 613, 617 (M.D. N.C. 1982) (concluding that, although a warrant issued by a magistrate judge in the Eastern District of North Carolina to be executed in the Middle District of North Carolina violated Rule 41(b)(1), the defendant was not prejudiced because "the warrant would have been issued by a judge or magistrate of the Middle District"); United States v. Vann, No. 07-CR-247, 2007 WL 4321969, *22–23 (D. Minn. 2007) (unreported) (concluding that, although a warrant issued by a magistrate judge in the District of Minnesota to be executed in the Western District of Wisconsin violated Rule 41(b)(1), the defendant was not prejudiced because "the same Warrant would have been issued by a Magistrate Judge in the Western District of Wisconsin").

13

Warrant 2 not been issued, the Oklahoma search would not have occurred as it did, meaning that the Government would not have had occasion to secure Krueger's cooperation or seize his hard drive and computer. Although the Government *may have* been able to obtain a warrant from a federal magistrate judge in the Western District of Oklahoma, meaning it *may have* ultimately secured Krueger's cooperation and seized his devices without violating Rule 41, such hypotheticals simply cannot cure the Government's gross negligence in failing to comply with Rule 41(b)(1) in the first instance. Cf. United States v. Glover, 736 F.3d 509, 514–15 (D.C. Cir. 2013) (explaining that a warrant issued in "blatant disregard" of a judge's territorial jurisdiction under 18 U.S.C. § 2518(3) and Rule 41 cannot be excused as a mere "technical defect").

Because Krueger met his burden of establishing prejudice and because suppression furthers the purpose of the exclusionary rule by deterring law enforcement from seeking and obtaining warrants that clearly violate Rule 41(b)(1),[10] see Herring v. United States, 555 U.S. 135, 144 (2009) (explaining that the exclusionary rule serves to deter not only deliberate and reckless police conduct but also grossly negligent conduct); United States v. McCane, 573 F.3d 1037, 1045 (10th Cir. 2009) (explaining that the exclusionary rule is appropriate only if the law

---

[10] But cf. United States v. Master, 614 F.3d 236, 242–43 (6th Cir. 2010) (suggesting, in the context of a warrant issued by a state-court judge who lacked warrant-issuing authority under state law, that the judge's lack of authority may *not* have an impact on police misconduct "if the officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate" and remanding to the district court to balance the benefits of deterrence against the costs of suppression).

14

enforcement activity at issue was not objectively reasonable), we affirm the district court's order granting Krueger's motion to suppression, cf. State v. Rupnick, 125 P.3d 541, 552 (Kan. 2005) (suppressing evidence obtained through a warrant that violated state statute requiring warrants to be executed within the judicial district where the issuing judge resides).[11]

## IV. Conclusion

For the foregoing reasons, we affirm the district court's order and remand for further proceedings consistent with this opinion.

---

[11] Because we affirm the district court on the merits, we need not address Krueger's argument that the Government waived appellate review of the district court's prejudice determination.

15

No. 14-3035, *United States v. Krueger*

**GORSUCH**, Circuit Judge, concurring in the judgment.

At the heart of the Fourth Amendment lies the promise that the government will not search your home without a warrant, your consent, or at least some real emergency. To justify its search of a home in this case the government relies exclusively on the claim that it had a warrant. But — and by its own concession — the magistrate judge who issued the warrant lacked statutory authority to do so. In this appeal, the government asks us to overlook this defect and declare the warrant somehow valid all the same for Fourth Amendment purposes. A sort of phantom warrant, then, disappearing whenever you look to positive law and manifesting itself only before the Constitution. It's certainly a bold claim — but one I find no more persuasive for it.

*

Here's the source of the government's problem. The Federal Magistrates Act identifies only three geographic areas in which a federal magistrate judge's powers are effective:

> Each United States magistrate judge . . . shall have [1] within the district in which sessions are held by the [district] court that appointed the magistrate judge, [2] at other places where that [district] court may function, and [3] elsewhere as authorized by law . . . all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure . . . . 28 U.S.C. § 636(a) (2012).

The problem in this case is that a magistrate judge purported to exercise power in none of these places. The government "readily concede[s]" that the

statute imposes geographic limitations on the powers of magistrate judges. Reply Br. at 16. The government readily concedes, too, that a federal magistrate judge assigned to the District of Kansas violated these restrictions when he purported to warrant the search of a home in Oklahoma. *See id.* And surely that's right: warranting a search in Oklahoma — authorizing governmental intrusion into private property located there — is exercising power *in* Oklahoma. And just as obviously, Oklahoma isn't within the District of Kansas, it isn't a place where the Kansas federal district court may function, and it isn't a place where the Kansas magistrate judge is otherwise specifically authorized to act by law. So putting the point plainly, the warrant on which the government seeks to justify its search in this case was no warrant at all when looking to the statutes of the United States.

\*

This is a point worth pausing over. For while in some places the government's briefs candidly admit that the warrant in this case was indeed statutorily invalid in light of § 636(a)'s territorial restrictions, in other places its briefs seem to take the view that any infraction in this case implicated only Rule 41 of the Federal Rules of Criminal Procedure and not any statutory command.

Neither is it surprising that the government might wish to elide the distinction between a violation of the rules and a violation of statute, for the government proceeds to ask us to apply a circuit precedent holding that we should not suppress evidence found in searches that violate only the terms of Rule 41

-2-

unless and until the defendant shows prejudice flowing from the violation.  And the government suggests that the defendant in this case cannot show any prejudice flowing from the fact that a Kansas magistrate judge issued the contested warrant, for an Oklahoma magistrate judge surely would have issued the same (and otherwise lawful) warrant if asked.  By its own terms, however, the precedent on which the government rests for the notion that the defendant must prove prejudice — *United States v. Pennington*, 635 F.2d 1387 (10th Cir. 1980) — applies *only* when a defendant claims a violation of Rule 41.  *Pennington* imposes no similar duty on defendants claiming a violation of a statutory command or the Fourth Amendment (or for that matter any other rule of criminal procedure).  *See id.* at 1390.  So, as it happens, quite a lot turns on the question whether the error before us implicates only Rule 41 or also a federal statute.[1]

---

[1]  I confess I question *Pennington*'s prejudice requirement even when applied only to Rule 41 violations.  The Federal Rules of Criminal Procedure expressly prescribe a standard for evaluating whether their violation is sufficiently grave to warrant remedial action:  it's Rule 52(a)'s harmless error standard.  That standard requires the government to prove any violation of Rule 41 to be harmless before it may be overlooked.  *Pennington* improperly reverses that burden — and does so not only without any authority in the rules themselves but without any regard to the fact Rule 52(a) speaks precisely and very differently to the same issue.  I appreciate that *Pennington* took its cue from Judge Friendly's opinion in *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975).  *See* George E. Dix, *Nonconstitutional Exclusionary Rules in Criminal Procedure*, 27 Am. Crim. L. Rev. 53, 93 (1989).  But it turns out that neither *Pennington* nor *Burke* supplies any plausible reason or authority to replace Rule 52(a) with an atextual rule of decision that shifts the burden from the government to the defendant — and does so, curiously, for but a single rule of procedure.  *See generally Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) ("It follows that Rule 52 is, in

For my part, I do not doubt that the error here is one of statutory dimension, just as the government (sometimes) concedes. As a matter of plain language, the statute indicates that rulemakers may provide *what* powers a magistrate judge will have. But the statute also expressly and independently limits *where* those powers will be effective. Section 636(a) says that a magistrate judge "shall have" what "powers and duties" the rules and other laws may afford but only "within the district" where he is appointed to serve, "at other places" where his court may function, or "elsewhere" as authorized by law. And the problem in this case is that a magistrate judge purported to exercise a Rule 41 power to issue a warrant (a what) but purported to exercise that power in a place (a where) that meets none of the statutory criteria.[2]

Put in a way your high school English teacher might appreciate, the magistrate judge is the subject of the sentence in § 636(a), his powers and duties

every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions."); *United States v. Lane*, 474 U.S. 438, 448 n.11 (1986) ("[O]n its face, Rule 52(a) admits of no broad exceptions to its applicability.").

[2] When it comes to the question *what* powers § 636(a) affords, some read the statute as conferring only those "powers" that were conferred to U.S. "commissioners" by rule prior to 1968, when the statute was enacted. Others suggest that the statutory language permits rulemakers to add further powers as they wish. Happily, that issue isn't one we have to tangle with today. *See In re Search of Scranton Hous. Auth.*, 487 F. Supp. 2d 530, 534 (M.D. Pa. 2007); *see also Gomez v. United States*, 490 U.S. 858, 865 (1989); *Stuart v. Rech*, 603 F.3d 409, 411 (7th Cir. 2010)*; United States v. Douleh*, 220 F.R.D. 391, 393-94 (W.D.N.Y. 2003).

are the objects of that sentence, and the language beginning "within the district" is a prepositional phrase that modifies (and so limits the reach of) the verb "shall have." In this way, the grammatical structure of the sentence indicates that magistrate judges shall have those powers specified by rule or other law (e.g., Rule 41), but those powers are effective only in certain specified geographic areas — and, as we've seen, none of those areas is implicated here. So malign your high school grammar class all you want and rejoice in the fact no one teaches it anymore: it holds the key to the statute before us and, really, there just isn't any better preparation for the job of understanding and giving effect to so many of the complex (often run-on) sentences that (over?) populate today's statute books.

Confirming this reading of § 636(a) is that any other interpretation would render large chunks of the law superfluous. So, for example, as best I can tell from its very occasional intimations in this direction, the government seems to think we might fairly interpret § 636(a) as delegating to rulemakers the authority to give magistrate judges any power exercisable anywhere the rulemakers might choose to specify. But reading the statute in this way would render Congress's express territorial limitations pointless. The statute might as well be written this way: "Magistrate judges shall have all powers and duties conferred or imposed by law or by the rules." Without careful attention to which phrases modify which words — without attention, yes, to the sentence's grammar — words drop out and the statute's meaning changes entirely. Following the government's occasional

-5-

intimations in this direction would leave us with no more than a pastiche of the actual statute, an unorganized collection of words, the kind of guess at meaning a reader is forced to make when he can't (or won't muster the effort to) figure out which phrases modify which words.

Accepting, then, that Congress's territorial restrictions deserve to be given *some* effect, you might wonder if the government could at least read the statute's last geographic limitation ("elsewhere as authorized by law") as referencing the Federal Rules of Criminal Procedure, not just other statutes — and in that way as allowing a magistrate judge to exercise any power afforded anywhere Rule 41 and the rulemakers might suggest. But this interpretation would quickly prove as problematic as its predecessor, for it would still render superfluous the first two (if not all three) of Congress's express statutory geographic restrictions.

Retreating yet again, you might ask if the government could at least read the statute's territorial limitations as applying to the magistrate judge himself and not to the powers he "shall have." But this reading, too, would mangle the statute's construction — supposing that the phrase beginning "within the district . . ." modifies the subject of the sentence rather than its verb — as if the law read "a magistrate judge within his district . . . shall have the powers and duties the law prescribes." And mangling the sentence structure in this way would yield some most unlikely results as well. It would mean that a Kansas magistrate judge would have no power to act on matters back home in his district

while he's vacationing in Colorado.  It would mean too (and conversely) that a Kansas magistrate judge could issue warrants effective anywhere in the country (or maybe even worldwide) so long as he happens to be physically present in his assigned district, even when his physical location is immaterial to the proceedings.  And it's pretty hard to imagine a reason underlying a statute like that — while it's simple enough to see the sense of the statute as it was written.  *See generally United States v. Strother*, 578 F.2d 397 (D.C. Cir. 1978).

Taking in the statute's legal surroundings provides further confirmation of the conclusion its plain language and logic already suggest.

Consider the statutory structure surrounding § 636(a).  It reveals that § 636(a)'s three specified geographic areas are not empty categories but fit with and find content in other easily identified statutes.  First, "within the district in which sessions are held by the court that appointed the magistrate judge" is linked to 28 U.S.C. §§ 81-131 (2012), which designate the boundaries of federal districts and the locations of court sessions.  In turn, "other places where that court may function" points to 28 U.S.C. § 141(b) (2012), which authorizes special court sessions outside the district.  And "elsewhere as authorized by law" references laws like § 219 of the Patriot Act, which empowers magistrate judges to issue search warrants for property beyond their district if certain terrorism activities might have occurred within their district.  USA PATRIOT ACT, Pub. L. No. 107-56, § 219, 115 Stat. 291 (2001).

-7-

History shows, as well, that territorial restraints on the powers of magistrate judges are nothing new. In fact, Congress has always taken care to impose relatively tight territorial limits on the powers of magistrate judges and their predecessors (commissioners). *See* 12 Charles Alan Wright et al., Federal Practice and Procedure § 3066 (2d ed. 1997). As originally enacted, § 636(a) itself allowed magistrate judges to exercise power *only* within the district of their appointment. *See* 28 U.S.C. § 636(a) (2000). It took Hurricane Katrina and the complications it imposed on the operation of the federal courts in Louisiana before Congress was willing to extend the power of magistrate judges to "other places" in which the district court is permitted to function and "elsewhere as authorized by law." *See* Federal Judiciary Emergency Special Sessions Act of 2005, Pub. L. No. 109-63, 119 Stat. 1993.

Finally, even Rule 41(b) is consistent with the notion that § 636(a) imposes independent territorial restrictions on the powers of magistrate judges: that rule grants to magistrate judges the power to do certain specified things — but only if they first have "authority within the district," a question the rules themselves do not purport to answer and that can be answered only by circling back to § 636(a).[3]

---

[3] There is one further slight wrinkle to unfold here: the sentence fragment that is 18 U.S.C. § 3102 (2012), a statute that cryptically says just this: "Federal, State or Territorial Judges, or U.S. magistrate judges authorized to issue search warrants, Rule 41(a)." You might wonder if this language suggests that, at least when it comes to search warrants, magistrate judges need only abide "Rule 41(a)" — now Rule 41(b) — and no other law. Under this interpretation, magistrate

Having said so much to this point, the question whether we have a statutorily authorized warrant lies nearly — but still not quite — behind us. So far we've seen that a careful examination of § 636(a) confirms the government's (sometimes) concession that the magistrate judge in this case violated that statutory provision by warranting a search outside the area in which his powers are effective. The problem isn't merely one of rule, it is one of statutory dimension. Still, it's not entirely clear what the extent of the statutory problem may be. It isn't because Congress has also instructed as a matter of statute that the government's statutory missteps may be disregarded if and when the government can prove that it didn't infringe the defendant's substantial rights. 28 U.S.C. § 2111 (2012). A standard that parallels the one we usually apply to infractions of the rules of procedure. *See* Fed. R. Crim. P. 52(a); *supra* n.1.

judges would be statutorily authorized to issue search warrants effective anywhere so long as they comply with the rule's terms. But the government itself doesn't attempt any argument along these lines — and, it turns out, for good reason. For the phrase "authorized to issue search warrants, Rule 41(a)" appears to modify the term "U.S. magistrate judges" and thus begs the question when magistrate judges are authorized to issue search warrants — and that's a question it (again) takes § 636(a) to answer. History confirms this reading too, for that's exactly what § 3102's predecessor, 18 U.S.C. § 611 (1940), provided: it empowered magistrate judges to issue warrants effective only within certain territorial limits. And there's no indication that § 3102 sought to undo territorial limits on a magistrate judge's powers. To the contrary, enacted in the aftermath of the introduction of the Federal Rules of Criminal Procedure, all indications are that § 3102 sought to explain merely that Rule 41 now governs the question when a magistrate judge with otherwise legally effective authority may issue a warrant. Finally and in any event, § 3102 itself points to Rule 41 and, as explained above, Rule 41 directs us right back to § 636(a) and its territorial constraints.

But after (sometimes) conceding a violation of § 636(a) in this case the government never follows up with a statutory harmless error argument on its own behalf. It never suggests that its violation of § 636(a) should be disregarded under § 2111. And it turns out the government doesn't attempt the argument for a clear and clearly correct reason. Section 636(a)'s territorial restrictions are *jurisdictional* limitations on the power of magistrate judges and the Supreme Court has long taught that the violation of a statutory jurisdictional limitation — quite unlike the violation of a more prosaic rule or statute — is *per se* harmful. *See, e.g.*, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 n.3 (1988) ("[A] litigant's failure to clear a jurisdictional hurdle can never be 'harmless' . . . ."). Of course, courts must exercise great caution before appending the jurisdictional label to a statute: often Congress seeks to provide only claim-processing rules for the parties to choose to invoke or waive and their loss sometimes can be held harmless. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010). But if § 636(a)'s territorial restraints aren't jurisdictional, I struggle to imagine statutory restraints that would be.

Here's why. Statutes that speak to "statutory or constitutional *power* to adjudicate" rather than the rights and claims of the parties are usually treated as jurisdictional. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). And § 636(a) does just that. It makes no mention of the rights of parties or rules for processing their claims. Instead, it expressly — and exclusively — refers to

-10-

the territorial scope of a magistrate judge's power to adjudicate. Context provides further clues pointing in the same direction. Section 636(a) is found in Title 28 of the U.S. Code — the same title as the statutes that define a district court's jurisdiction. *Cf. Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1158 (10th Cir. 2013) (Gorsuch, J., concurring), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). And while 28 U.S.C. §§ 1331-32 generally define the scope of the district courts' powers by reference to subject matter, § 636(a) defines the scope of magistrate judges' powers by reference to territory. In doing so, and as we have already seen (and will soon see again), the statute evinces a deeply rooted historical concern for limiting the territorial reach of magistrate judges' powers. And even if there were some lingering ambiguity left after taking in all this evidence, the title of § 636 reads: "Jurisdiction, powers, and temporary assignment." Pretty hard to ignore, especially when placed alongside all the other textual clues. In light of all this evidence it's no surprise that other circuits have also concluded that § 636(a)'s restraints are indeed jurisdictional. *See, e.g.*, *N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994). And no surprise that the government hasn't attempted to suggest otherwise in this appeal.

\*

With that it's — finally — possible to turn to the main event in this appeal. We can now accept as correct the government's (sometimes) concession that the

-11-

warrant issued in this case was unlawful, beyond the magistrate judge's statutory jurisdiction to authorize. And with that in hand we can confront directly the government's phantom warrant argument — its contention that a warrant issued in defiance of the jurisdictional territorial restraints on a magistrate judge's power under statutory law somehow remains a valid warrant under the Fourth Amendment.

When interpreting the Fourth Amendment we start by looking to its original public meaning — asking what "traditional protections against unreasonable searches and seizures" were afforded "by the common law at the time of the framing." *Atwater v. City of Lago Vista*, 532 U.S. 318, 326 (2001) (internal quotation mark omitted). Whatever else it may do, the Fourth Amendment embraces the protections against unreasonable searches and seizures that existed at common law at the time of its adoption, and the Amendment must be read as "provid[ing] *at a minimum*" those same protections today. *United States v. Jones*, 132 S. Ct. 945, 953 (2012).

That principle, it seems to me, poses an insurmountable problem for the government in this case. For looking to the common law at the time of the framing it becomes quickly obvious that a warrant issued for a search or seizure beyond the territorial jurisdiction of a magistrate's powers under positive law was treated as no warrant at all — as *ultra vires* and *void ab initio* to use some of the law's favorite Latin phrases — as null and void without regard to potential

-12-

questions of "harmlessness" (such as, say, whether another judge in the appropriate jurisdiction would have issued the same warrant if asked). So, for example, a justice of the king's bench with nationwide territorial jurisdiction afforded by Parliament could issue a warrant anywhere in the kingdom. Meanwhile, warrants issued by justices of the peace — county officials empowered to act only within their respective counties — were executable only within those same limited bounds. *See, e.g.*, 4 William Blackstone, Commentaries *291-92; 2 Matthew Hale, Historia Placitorum Coronae 111 (1736); *Engleman v. Deputy Murray*, 546 F.3d 944, 948-49 (8th Cir. 2008).[4] Neither can I think of any reason (and the government advances none) to think this history uninformative when it comes to our case. The principle animating the common law at the time of the Fourth Amendment's framing was clear: a warrant may travel only so far as the power of its issuing official. And that principle seems clearly applicable — and dispositive — here.

More recent precedent follows this long historical tradition, marching in support of the same conclusion. In discussing the Fourth Amendment's demands

---

[4] "A warrant from the chief, or other, justice of the court of king's bench extends all over the kingdom . . . . But the warrant of a justice of the peace in one county, as Yorkshire, must be backed, that is, signed by a justice of the peace in another, as Middlesex, before it can be executed there." 4 William Blackstone, Commentaries *291-92; *see also id.* at *291 ("When a warrant is received by the officer, he is bound to execute it, so far as the jurisdiction of the magistrate and himself extends.").

the Supreme Court has spoken of the need for a "valid warrant" and indicated that for warrants to be valid they must emanate from "magistrates empowered to issue" them. *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932); *see also* Thomas M. Cooley, The General Principles of Constitutional Law in the United States of America 210 (1880) (noting that a warrant must issue from "a court or magistrate empowered by the law to grant it"). Time and again state and circuit courts have explained that this means a warrant issued in defiance of positive law's restrictions on the territorial reach of the issuing authority will not qualify as a warrant for Fourth Amendment purposes.[5]

This court has made the same point too. In *United States v. Baker*, 894 F.2d 1144 (10th Cir. 1990) (per curiam), a state court judge purported to issue a warrant to conduct a search in "Indian territory" related to a possible crime by a Native American. Something that the state court judge had no lawful jurisdiction

---

[5] *See, e.g.*, *State v. Kirkland*, 442 S.E.2d 491, 491-92 (Ga. Ct. App. 1994); *State v. Jacob*, 924 N.E.2d 410, 415-16 (Ohio Ct. App. 2009); *Sanchez v. State*, 365 S.W.3d 681, 684-86 (Tex. Crim. App. 2012); *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010); *Weinberg v. United States*, 126 F.2d 1004, 1006-07 (2d Cir. 1942). In return, the government cites three cases that, it says, support its view. But not one of these cases references the original meaning of the Fourth Amendment or contrary historical practice and precedent. Moreover, two of the cases held that, whether or not a Fourth Amendment violation occurred when a judge issued a warrant outside his jurisdiction, suppression wasn't the appropriate remedy (an analytically separate question I will come to in a moment). *See United States v. $64,000.00 in U.S. Currency*, 722 F.2d 239, 246 (5th Cir. 1984); *United States v. Goff*, 681 F.2d 1238, 1240 n.1 (9th Cir. 1982). And the third, *United States v. Berkos*, 543 F.3d 392 (7th Cir. 2008), found the magistrate judge *had* lawful authority to issue a warrant executable outside his district thanks to a statute wholly inapplicable here. *See id.* at 396-98.

-14-

to do.  In these circumstances, this court had no trouble holding that the state court's warrant was no warrant at all for Fourth Amendment purposes.  To be sure, and as the government emphasizes, the facts of our current case are different.  But the government doesn't suggest why the difference in facts should make a difference in principle — why we should hold that a warrant issued in defiance of the court's jurisdiction should be considered invalid for Fourth Amendment purposes in one case but not the other.  Perhaps the closest the government comes to suggesting a reason to distinguish *Baker* is to observe that neither party there attempted the argument it attempts here — no one tried to suggest that a warrant executed beyond the jurisdiction of the issuing judge remains valid under the Fourth Amendment.  But I'm still unclear why this should make a difference when *Baker* expressly proceeded to decide the issue — and when even the government itself today acknowledges that the warrant in *Baker* "was invalid under the Fourth Amendment."  Aplt. Br. at 39.

Neither are history and precedent without reason to support them.  No doubt, some might suggest that enforcing territorial boundaries on the effectiveness of warrants is inefficient and arbitrary.  But our whole legal system is predicated on the notion that good borders make for good government, that dividing government into separate pieces bounded both in their powers and geographic reach is of irreplaceable value when it comes to securing the liberty of the people.  *See generally Bond v. United States*, 131 S. Ct. 2355 (2011); The

-15-

Federalist Nos. 28, 32 (Alexander Hamilton), Nos. 46, 51 (James Madison). Ours is not supposed to be the government of the Hunger Games with power centralized in one district, but a government of diffused and divided power, the better to prevent its abuse. Congress has repeatedly displayed a preference for geographically divided power in its treatment of the federal judiciary since the Judiciary Act of 1789 — "almost invariably observ[ing]," for example, the principle that federal judicial districts should not cross state lines. Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System 21 (7th ed. 2015). And, sensitive to the fact that magistrate judges do not enjoy life tenure and other independence-assuring protections found in Article III, Congress has taken particular care to limit the geographic range of their authority since the very inception of the office — and it would be more than a little ironic for an Article III court to deny effect to Congress's attentive work in this area. *See generally* Sharon E. Rush, *Federalism, Diversity, Equality, and Article III Judges: Geography, Identity, and Bias*, 79 Mo. L. Rev. 119 (2014); Henry J. Bourguignon, *The Federal Key to the Judiciary Act of 1789*, 46 S.C. L. Rev. 647 (1995); Thomas E. Baker, *A Catalogue of Judicial Federalism in the United States*, 46 S.C. L. Rev. 835 (1995).[6]

---

[6] Maybe it goes without saying, but nothing in what I've said should be taken as speaking to the statutory authorities of a *district judge* to issue a warrant for an out-of-district search. Unlike magistrate judges, the jurisdiction of district courts is usually defined by subject matter and parties rather than strictly by

Persuaded as I am by this point that we lack a valid warrant for Fourth Amendment purposes, even that doesn't quite finish the story. The Fourth Amendment, after all, doesn't prohibit unwarranted searches but unreasonable ones. And a warrantless search may still be a reasonable one if the government can show consent or exigent circumstances. Even when an unreasonable search does exist, the Supreme Court has explained, we must be persuaded that "appreciable deterrence" of police misconduct can be had before choosing suppression as the right remedy for a Fourth Amendment violation. *Herring v. United States*, 555 U.S. 135, 141 (2009) (internal quotation mark omitted); *United States v. Karo*, 468 U.S. 705, 717 (1984).

But whatever arguments the government might have once had along these lines it has long since waived. Choosing to place all its eggs in the warrant basket, the government has advanced in this appeal no other grounds for reversing the district court's holding that a Fourth Amendment violation occurred. It has not argued consent. It has not argued exigent circumstances. And when it comes to the question of remedy, it does not dispute that appreciable deterrence can be

geography. *See* 28 U.S.C. §§ 1331-32 (2012). It's true, of course, that district courts have statutorily specified territories, *see id.* §§ 81-131, and Congress has designated various (venue) rules for determining which court should hear which case or controversy, *see, e.g.*, *id.* § 1391. But those limitations, while still quite real, are quite different from § 636(a)'s much more exacting territorial restraints and it is those alone we are asked to pass upon in this case.

had by permitting suppression in this case. The district court found that any reasonable officer charged with executing a warrant issued by a Kansas magistrate judge for a search in Oklahoma should have known it was facially deficient and that appreciable deterrence of future mistakes along these lines could be had by ordering suppression. On appeal the government challenges these assessments not at all.

So it is that, for all the complications that may lie below the surface in this case and may still surface for resolution in the future, this appeal remains just as it appeared from the beginning. The government asks us to resolve but one question, bold as it is: whether a warrant issued in defiance of positive law's jurisdictional limitations on a magistrate judge's powers remains a warrant for Fourth Amendment purposes. I would not hesitate to answer that question put to

us and reply that a warrant like that is no warrant at all.  And in that light I am

pleased to join my colleagues in affirming the district court's judgment.[7]

--------

[7] My colleagues reach the same destination by a different path.  Without passing on the question whether there's been a violation of § 636(a) or the Fourth Amendment — they take care to leave those questions open — my colleagues treat this case as involving at least a violation of Rule 41 and apply the *Pennington* prejudice test.  In doing so, they proceed to hold that the defendant has shown prejudice.  I regret I am unable to join my colleagues in this approach.  In my view, not only is *Pennington* dubious law for reasons I've already explained.  If forced to apply *Pennington*, I would have a very difficult time seeing how the defendant in this case might establish "prejudice" in any meaningful sense of the term.  After all, if the Kansas magistrate judge merely violated a rule of procedure by issuing a warrant for a search in Oklahoma, where's the "prejudice" when everyone agrees an Oklahoma magistrate judge surely would have issued the very same — and otherwise lawful — warrant if asked?  Neither is it clear to me why, if all we have is a violation of the rules of procedure, this error wouldn't also qualify as harmless under Rule 52(a).  Having said all that, I agree entirely with my colleagues that, in comparison to any other violation of the rules of procedure, there's something special about the government's failure to get right "something as basic as who can issue a warrant."  Maj. Op. at 12.  I simply believe myself compelled to explain why I think that kind of error is special and basic.  And it's my view that the error is special and basic because it involves a violation of the magistrate judge's statutory territorial jurisdiction under § 636(a) as prescribed by Congress.  And that's the very sort of jurisdictional limitation on the execution of warrants that the common law and Fourth Amendment have enforced since time out of mind.

-19-